# THOMAS L. HOLMES *v.* STATE OF MARYLAND

[No. 571, September Term, 1969.]

*Decided October 5, 1970.*

The cause was submitted to MURPHY, C.J., and ORTH and THOMPSON, JJ.

*John J. O'Meara* for appellant.

*James L. Bundy, Assistant Attorney General*, with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City*, and *Joseph G. Koutz, Assistant State's Attorney for Baltimore City*, on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

When Thomas L. Holmes, charged with the robbery of Earle Barnes with a deadly weapon and six related offenses, came on for trial without a jury in the Criminal Court of Baltimore, he requested and was granted permission to be seated among the spectators.[1] There were eight persons seated in the space reserved for spectators and witnesses and Holmes took a position among them. He was located, in the words of the presiding judge, "in as deceptive position as the defense counsel's ingenuity could devise." During the trial none of the three witnesses called by the State made a positive judicial identification of Holmes as one of the robbers. Barnes, the victim, said, "It lays between two men", seated in the courtroom. One of the two was Holmes. Asked if he could identify which of the two was the person who participated in the robbery, Barnes said, "That's really a question." He ultimately selected the one other than Holmes as the one "as near as I can recollect, looks more like the one who was on the outside [as a lookout] than the other." The court noted that "both men are similar in appearance, both are similar as to age, height * * *." Officer William E. Stanley and Officer Jerome Carter participated in the arrest of Holmes shortly after the robbery. Stanley said he did not see in the courtroom the man he had arrested and knew as Holmes, nor did he see anyone in the courtroom that looked like any one of the three men he arrested. Carter said he would recognize the three men he and Stanley arrested and stated that appellant looked like the

1. Preston Kitchen and Walter E. Jones were jointly indicted with Holmes but Holmes' case was severed for trial on his motion. Kitchen and Jones were each convicted of robbery with a deadly weapon at a court trial and were each sentenced to 10 years.

one known as Thomas L. Holmes. A reason for the lack of a positive judicial identification was brought out by Carter. The appearance of Holmes had changed between the time of his arrest and the time of his trial.[2] At the time of his arrest he had a mustache and "his hair was slick, kind of slick and curly on top, and he had a rag tied on the side of it * * * he wore his hair in a process." At the time of trial there was "no hair, no mustache." Holmes testified in his own behalf. On cross-examination he said that he wore a scarf because his hair had been processed, that hair is processed when it is long, that his hair was long and he was wearing a mustache when he was arrested, that he shaved off his mustache because "over at City Jail the Captains, you know, over at the kitchen and stuff, they want you to have your mustache and stuff clean when you go into the kitchen." He got his hair cut very short "because over there I didn't have the facilities to keep my hair up, so, I mean, I just got it cut off."

The question is whether, despite the lack of a positive judicial identification, the evidence was sufficient to establish the criminal agency of appellant beyond a reasonable doubt. We find that it was.

There was evidence that appellant appeared at a preliminary hearing. At this hearing Barnes identified each of the three robbers and testified as to the role each played in the robbery. Barnes was robbed about 2:30 P.M. while working at a filling station. He was servicing cars "when three young fellows came in, and two of them went over by the Pepsi Cola machine and stood around there, and the other one went to the end of the pumps and stood there, and I kind of eased toward them and they went inside [the office]. * * * The two men went inside. The third man took up a position out by the street by the sidewalk where he was able to see in all directions there, and I went to the doorway to see what the two were doing in

---

2. It was conceded below that the man on trial under the name of Holmes was the same man arrested by Stanley and Carter and who appeared at a preliminary hearing attended by Barnes and the officers and who was held over for action of the Grand Jury.

there so long. So they had a handful of pennies, and they said they wanted change. * * * They wanted me to take the pennies and give them money for cigarettes so they could use the machine. * * * When I reached for the pennies the one shoved the pennies back in his pocket, grabbed my arm, and pulled me inside the building, and the other one pulled a gun and rammed it in my stomach, and said, 'This is the real thing. This is a stick-up. Give us your money.' " They stole $22 from his person and pistol whipped him brutally about the face and head when he said they had all the money. Barnes hand was broken as he tried to ward off the blows. After a search, apparently convinced that there was no more money, all three fled.

Stanley and Carter were working the burglary and hold-up detail when they received a call of a hold-up in progress. Within minutes of the crime they received a description of the three robbers: "No. 1 subject was sixteen to twenty years old, six foot, 160 to 170 pounds, light complexioned, yellow shirt, armed; No. 2 subject was sixteen to twenty, five foot ten, 150 pounds, medium complexion, green coveralls; No. 3 was sixteen to twenty, no further description." The officers received information from a woman "with reference to an automobile she had observed", shortly thereafter saw an automobile which fit the description they had received, and observed three men alight from it. One had on a yellow shirt, one had "on a two-piece green, looked like a uniform affair, the pants and the shirt were green, and the other man had on a pair of pants and a shirt and he had a pair of green coveralls in his hand." Stanley testified, "I observed that these three men did fit the description that I had received over the police radio." Jones wore the yellow shirt. Holmes gave the coveralls to Kitchen who threw them into the car. Twenty-two dollars in currency and thirty-five pennies (the number Barnes said was tendered him for change) were found on the person of Jones and a pouch of pennies was found in the car. The State offered a photograph of Thomas Holmes and showed that it was

taken by the police shortly after Holmes' arrest as a matter of routine procedure. It was established that the photograph was of appellant and that it represented appellant's appearance at the time of his arrest. The photograph was admitted in evidence. Barnes then testified that the photograph was that of one of the robbers, specifically the one dressed in green coveralls who served as a lookout. It was also shown that he had so identified that man at the preliminary hearing. Since it was clear that the man in the photograph was one of the robbers and that the photograph was of appellant, the evidence was sufficient, in the circumstances, to establish the criminal agency of appellant.[3]

Appellant also urges that the introduction of evidence as to the identification at the preliminary hearing violated his right to due process of law. We do not think it did. Evidence of an extrajudicial identification is admissible when made under circumstances precluding the suspicion of unfairness or unreliability and where the out-of-court declarant is present at the trial and subject to cross-examination whether or not the out-of-court declarant made a positive in-court identification. *Smith and Samuels v. State*, 6 Md. App. 59, 63-64. See *Gibbs v. State*, 7 Md. App. 35; *Cook v. State*, 8 Md. App. 243. We see nothing in the record here compelling the conclusion that the extrajudicial identification was impermissibly suggestive. It was made at a preliminary hearing at which appellant was represented by counsel and under the impartial eye of the presiding judge. See *Tyler v. State*, 5 Md. App. 265. As far as is disclosed by the record the identification procedure at the preliminary hearing was in substance no different than the normal procedure under

---

3. In denying a motion for judgment of acquittal the trial court said, "The complaining witness was unable to identify at the trial today the defendant on trial. The picture taken of the defendant at the time he was arrested discloses that there has been a substantial and material alteration in his appearance. His hair has been cut very short and his mustache has been removed. The identification, however, has been made by the complaining witness here at an earlier court proceeding and testified to beyond any question of a doubt."

258

which a judicial identification is made during a trial on the merits. Compare *Coleman v. State,* 8 Md. App. 65. See *Billinger v. State,* 9 Md. App. 628. We hold there was no error in the admission of the evidence as to the extrajudicial identification of appellant by the victim.

*Judgments affirmed.*