569 P.2d 916

The STATE of Idaho,
Plaintiff-Respondent,

v.

Danny J. WARD, Defendant-Appellant.

No. 11931.

Supreme Court of Idaho.

Sept. 28, 1977.

Vernon K. Smith, Boise, for defendant-appellant.

Wayne L. Kidwell, Atty. Gen., James F. Kile, Asst. Atty. Gen., Lynn E. Thomas, Deputy Atty. Gen., Boise, for plaintiff-respondent.

PER CURIAM.

On August 31, 1973, John Brennan was shot and killed in front of the Hi Ho Club in Garden City, Idaho. At a jury trial held February 24 to 27, 1975, defendant-appellant Danny Ward was found guilty of second degree murder. He was sentenced to life imprisonment and appeals both the conviction and the sentence.

The facts of the crime, as established at trial, are that Danny Ward and his friend Larry LaFrainer stopped their motorcycles in front of the Hi Ho Club at 1:00 o'clock on the morning of August 31, 1973, as Brennan exited along with two unidentified acquaintances and two women, Judy Cole and April Jo Lavala. Lavala, who had recently dated both Ward and Brennan, climbed aboard Ward's motorcycle, leaving her purse on the ground next to it. Brennan moved to pick the purse up, but was warned by Ward to leave it alone. Brennan did as requested and turned to walk back toward the Hi Ho Club. Ward asked for and received a handgun from LaFrainer who was carrying the weapon for him. All of those who were present at the scene and who testified at trial (neither Ward nor Lavala testified) alleged that they did not actually see the shooting take place. Judy Cole testified, however, that she heard a loud noise and turned to see Ward with his arm outstretched pointing a gun at the back of the victim. She also described a small silver derringer-type gun in appellant's hand, the smoke coming from the barrel of the gun, and the blood spurting from Brennan's shoulder. LaFrainer, who claimed to be picking up a motorcycle helmet at the time of the shot, testified that he asked what had happened and Ward replied that he thought he had shot Brennan. Ward fled the state and was not apprehended for several months, but before leaving he phoned Connie LaFrainer and told her that he had shot and killed a man.

After Ward fled the scene, Judy Cole joined April Jo Lavala in the latter's car. Lavala was in possession of a gun which she had taken from Ward, stating that they would not get her man. Cole drove out of Garden City and Lavala fired the gun once en route. Cole stopped the car near the Ridenbaugh Canal while Lavala wrapped the gun in a scarf, left the car and went down the embankment towards the canal. She returned a few minutes later without the gun. The gun was retrieved from the canal later that same day by divers working for the Garden City police. The gun had two spent cartridges.

These are the basic facts of the crime. However, the issues on appeal turn on certain events not directly connected with the crime. Ward was returned to Idaho sometime in May or June of 1974, having waived extradition. A preliminary hearing for Ward and Lavala was held on July 8, 1974. Cole and the pathologist were the only witnesses called by the State and no items of physical evidence were introduced. In the last week of July, 1974, the police chief of Garden City packaged the evidence in question—the murder weapon (a small silver derringer-type .357 magnum), a .38 caliber slug found in the ceiling beam in the Hi Ho Club, two spent cartridges and the victim's clothing—for shipment by REA Air Express to the FBI laboratory in Washington, D. C. In September, an FBI agent notified the Garden City police that the package had not been received. An attempt to trace the package proved fruitless and by December 11, 1974, the police had written confirmation that neither REA nor the FBI could locate the package.

Defendant's main assignment of error on appeal is that he was denied a fair trial because of the prosecution's failure to make available for him these items of allegedly material and exculpatory evidence. Defendant relies on the case of State v. Harwood, 94 Idaho 615, 495 P.2d 160 (1972), for the proposition that suppression of materi-

al, exculpatory evidence is grounds for reversal. He argues that the absence of the gun and slug operates, as in *Harwood,* to deprive defendant of ballistics tests which could have proved exonerating. It is urged that such tests might have proved that the bullet recovered from the ceiling of the Hi Ho Club was not fired from Ward's gun or, if it was, that it could not have produced the type wound from which the victim died.

The *Harwood* case involved a conviction for illegal possession of a game animal. The conviction was based entirely upon circumstantial evidence, mainly the conservation officer's suspicion that the animal could not have been shot in an authorized area because of his estimate that the defendant could not have walked the distance in the time stated. The prosecuting attorney promised to supply defense counsel with ballistics information as it became available. The ballistics report from the FBI showed that the bullet found in the carcass of the animal could not have been fired from a .270 Winchester Model 721 Remington—which was the sole weapon possessed by defendant. This Court held there that the suppression of such highly material, indeed, conclusively exculpatory evidence, even through inadvertence, was a denial of due process and reversed the defendant's judgment of conviction.

The United States Supreme Court has also had occasion recently to deal with the question of what standard is to be applied in determining whether a defendant has been prejudiced by a prosecutor's failure to volunteer evidence available to him. Mr. Justice Stevens, speaking for a majority of the Court held:

> ". . . if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed. This means that the omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial. On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt."
> *U. S. v. Agurs,* 427 U.S. 97, 112–13, 96 S.Ct. 2392, 2401–02, 49 L.Ed.2d 342 (1976).

Mr. Justice Brennan urged a higher standard as the appropriate norm in determining whether prosecutorial non-disclosure has prejudiced a defendant's case:

> ". . . if there is a significant chance that the withheld evidence, developed by skilled counsel, would have induced a reasonable doubt in the minds of enough jurors to avoid a conviction, then the judgment of conviction must be set aside." 427 U.S. at 119, 96 S.Ct. at 2404–05.

The Court of Appeals, whose judgment was reversed in *Agurs,* had adhered to an even stricter standard, namely,

> ". . . if there is any reasonable likelihood that the [missing evidence] . . . could have affected the judgment of the jury." 427 U.S. at 103, 96 S.Ct. at 2397.

 Whether, in a close case, this Court would choose to adopt any of the above standards, or still another of its own devising, as the authoritative gloss on the *Idaho* constitution is not important here.[1] For one thing, there is no hint here of any actual "suppression" (deliberate or negligent) or "non-disclosure" of evidence. While it is true that the duty of disclosure includes a duty to use earnest efforts to preserve evidence for possible use by defendant, *People v. Norwood,* 547 P.2d 273 (Colo.App.1976), the evidence here was lost through no fault of the State. The record contains extensive documentation of the State's good faith efforts to trace and retrieve the lost package.

---

1. *See,* for example, the standards set forth in the approved draft of A.B.A. Standards—Discovery and Procedure Before Trial (1970).

 *See also,* this Court's adoption of the highest standard of accountability in situations where a request for disclosure has been made and the prosecutor has refused to turn over the evidence requested. *State v. Brown,* 98 Idaho 209, 560 P.2d 880 (1977).

Furthermore, defendant here cannot put himself in the shoes of the defendant in *Harwood* or even those of the defendant in *Agurs*. His statement of the ways in which the evidence might have proved exculpatory seems to us to be so speculative as to strain credulity. We cannot say that defendant was prejudiced by the loss of these items of circumstantial evidence when the record is replete with accounts of eye witnesses and admissions by defendant himself. Defendant is no worse off than he would have been had the gun never been retrieved from the bottom of the canal where it was deposited by his accomplice. Had that been the case, it is hard to believe that defendant would then be raising what appears to us to be essentially a makeweight argument.

The same disposition can be made of defendant's related assignment of error, namely, that he was denied his constitutional right to due process of law by reason of the trial court's refusal to grant his motion to vacate trial setting. Defendant argues that he had no official word from the State regarding the lost evidence until receiving the State's reply, on February 20, 1974, to his motion for discovery. Since this was only four days before trial was due to begin, defendant argues that he was prejudiced by the court's refusal to grant a continuance because he was deprived of the time and opportunity to retrieve the lost evidence himself or, in the alternative, to find and test other and similar evidence.

■ The State presents a different reading of the facts. By affidavit, the County Prosecutor avers that he notified both the court and counsel for defendant of the loss of the evidence as early as December 11, 1974. The State notes further that defense counsel's motion for discovery was dilatory in that it was not presented until February 14, 1975, whereas the court had ordered all preliminary motions to be submitted no later than November 26, 1974. The State stresses that defense counsel had more than seven months within which to request the evidence in order to run the tests which were allegedly essential to defendant's case. The State renews its argument that the evidence was not exculpatory and that the alternate tests could still have been run before, during or even after the trial if counsel truly felt the results would prove exculpatory. A decision to grant or deny a motion for continuance is vested in the sound discretion of the trial court. *State v. Richardson,* 95 Idaho 446, 511 P.2d 263 (1973), *cert. denied,* 414 U.S. 1163, 94 S.Ct. 928, 39 L.Ed.2d 117 (1974). Under the facts of this case, we cannot say that appellant has shown that his substantial rights have been prejudiced or that the district court abused its discretion by denying the motion for a continuance. *State v. Laws,* 94 Idaho 200, 485 P.2d 144 (1971).

■ Appellant's next assignment of error is predicated on an alleged "radical change" in elements of the testimony of two of the State's witnesses. Appellant complains that the testimony of these witnesses at trial was radically different from their testimony at the preliminary hearing. We are unable to grasp appellant's contention that change in a witness's testimony comprises error in the trial proceedings. Counsel for appellant thoroughly cross-examined the witnesses concerning their trial and pretrial testimony and was thus afforded the opportunity to use the pretrial testimony as impeachment. The change in testimony also afforded counsel the right to make argument in that regard to the jury. Had counsel suddenly been presented at trial with testimony concerning matters of which the witnesses had previously claimed total ignorance, then it is conceivable that counsel could claim surprise. A motion for continuance to meet such testimony could then properly be made and, in some circumstances, the record might show that denial of such a motion for continuance would be error, perhaps even prejudicial error. Here no such motion was made. Where a witness is shown to have testified earlier in a matter materially different from his trial testimony, the discrepancy can be shown, explored and argued to the jury, who are the final arbiters as to the credibility to be attached to the testimony of such a witness. We are not persuaded that there is any

merit in this assignment of error. Appellant's other assignments of error have been reviewed. They are likewise without merit and evidence no prejudice to the defendant.

■ Finally, appellant challenges his sentence to life imprisonment as excessive in view of the fact that there was strong provocation by the decedent. This Court has long held that sentencing is generally within the trial court's discretion and will not be disturbed on appeal unless a clear abuse of discretion is shown, and that ordinarily there is no abuse of discretion when the sentence is within its statutory limit. *State v. Hawk*, 97 Idaho 1, 539 P.2d 553 (1975). Here appellant makes no affirmative showing that the sentence pronounced was excessive. No authority is offered in support of his assertion that second degree murder warrants less than life imprisonment by reason of provocation; no demonstration of provocation is pointed to in the record; even the bare assertion that the trial court abused its discretion is lacking in his brief. The sentence pronounced by the trial court was within the statutory limits provided by I.C. § 18–4004. The trial court had before it a thorough presentence report documenting defendant's extensive prior criminal record. We cannot say that the trial court abused its discretion in sentencing Ward to a term of life imprisonment. The conviction and sentence are affirmed.