590 P.2d 1001

STATE of Idaho, Plaintiff-Respondent,

v.

Lester Daniel SMOOT,
Defendant-Appellant.

No. 12299.

Supreme Court of Idaho.

Nov. 22, 1978.

856

R. M. Whittier, Pocatello, for defendant-appellant.

Wayne L. Kidwell, Atty. Gen., James Kile, David G. High, Asst. Attys. Gen., Boise, for plaintiff-respondent.

DONALDSON, Justice.

The defendant-appellant, Lester Daniel Smoot, was charged with forcing a 22 year old Pocatello woman to have intercourse with him under threat of bodily harm. The rape was alleged to have taken place during the early morning hours of May 16, 1975. A jury found Smoot guilty of rape upon which a judgment of conviction was entered and he was sentenced to six years in the state penitentiary.

The victim testified at trial as follows: At approximately 7:30 to 8:30 p. m. on May 16, 1975, one of the victim's co-workers, picked her up at her home with the intention that they go to a local bar and listen to a band. They met other mutual acquaintances at the bar and stayed until closing time. At approximately 1:00 a. m., as they were preparing to leave, one of the friends suggested that they all go out to breakfast but the victim told the group she preferred to go home. Since she had not driven her own car, this presented problems because her friend wanted to have breakfast. After some discussion, the defendant, who was not part of the group urging they go out to breakfast, agreed to follow the victim while she drove her friend's car to her friend's house in Chubbuck, and then give the victim a ride back to her residence in Pocatello.

According to the victim, the defendant was not a total stranger; she had met him several times before and had danced with him earlier that evening. At that time he had suggested that they go to bed, but she had been offended at this remark, and he apologized. She also knew that he was married.

After she drove her friend's car to Chubbuck, she got into the defendant's pickup expecting to be driven home. She stated that Smoot proceeded to drive in a different direction from the correct route to her home. She contended that she protested and Smoot stated: "I thought we would just go for a ride." Smoot drove her to a point south of the Pocatello airport, stopped the pickup, and then forced her to have sexual intercourse while he held her arms to prevent her from resisting. Afterwards, they drove back to Pocatello and he returned her to her home. She then called a friend and went to the friend's house; the friend in turn called the police, who arranged for her to be examined by a physician.

The examining physician, Dr. Henry S. Byrd, was on emergency room duty that morning. He testified that the victim had

told him that she had been forcibly raped earlier that morning. His examination, conducted at approximately 4:00 a. m., revealed that semen was deposited in her vagina; and based upon the motility of the sperm in the sample he extracted, he concluded that she had had intercourse within the previous six to eight hours.

Smoot testified in his own defense and stated that he and the victim had seen each other several times before. He admitted that he had offered to give her a ride home on the night in question and that after picking her up in Chubbuck he had driven west toward American Falls. He testified, however, that he had gone that way with the intention of making a loop through the surrounding country and into Pocatello from the southwest. They did not drive this loop because the defendant missed the proper turn. While they were in Power County and preparing to drive back to Pocatello, the two of them agreed to have intercourse. However, because the defendant had been drinking all night he was unable to attain an erection and thus he neither penetrated the complaining witness nor ejaculated. After this unsuccessful attempt at sex, they returned to Pocatello and he let her off at her residence at approximately 2:40 a. m.

Smoot submits nineteen assignments of error. However, the assignments fall basically in the areas of discovery, prosecutorial conduct during trial, trial court rulings as to evidence, courtroom procedure, jury instructions, and sentencing.

■ Assignments of error which were not supported by argument or authorities in the brief will not be considered on appeal. *Voyles v. City of Nampa*, 97 Idaho 597, 548 P.2d 1217 (1976); *V–1 Oil Co. v. Lacy*, 97 Idaho 468, 546 P.2d 1176 (1976); *Church v. Roemer*, 94 Idaho 782, 498 P.2d 1255 (1972). We shall discuss only such assignments that have been adequately briefed or argued and which we deem material.

### DISCOVERY

Smoot raises three assignments of error relating to the state's failure to disclose and preserve material evidence specifically requested by the defense in their pretrial motion for discovery.

Smoot argues that he was denied due process by the state's failure to provide him prior to trial with a copy of a written statement given by the victim to the Power County Sheriff's Office. On December 8, 1975, the state responded to Smoot's specific discovery request for every relevant written or recorded statement made by any witness, by stating the victim had made an oral statement to the Power County Sheriff's Deputy who made a written report pertaining to his initial investigation. On December 31, 1975, the prosecution discovered the written statement given by the victim to the Power County Sheriff's Office and mailed a copy to Smoot's attorney. However because the state affixed insufficient postage this copy of the witness's statement was not delivered prior to trial. Smoot's attorney was furnished a copy of the victim's statement, a two-page handwritten account of the rape incident, after the victim's direct testimony at trial.

■ Smoot argues that the standard adopted by the United States Supreme Court in *Brady v. Maryland*, 373 U.S. 83, 183 S.Ct. 1194, 10 L.Ed.2d 215 (1963) should be utilized in determining whether the prosecution's failure to supply the defense with a copy of the victim's statement prior to trial constituted prejudicial error. We do not believe this is the correct inquiry in the instant case.

*Brady* deals with the complete suppression during trial of exculpatory material while in the instant case the defense learned of the material at trial, albeit not until the second day of trial. The Ninth Circuit in *United States v. Miller*, 529 F.2d 1125 (1976), set down what this Court feels is the appropriate focus of review for such situations. The Court in *Miller* in holding *Brady* inapplicable stated:

> Thus, our inquiry on appeal is not whether the evidence had it been disclosed, might reasonably have affected the jury's judgment on some material point. Rath-

*er it is whether the lateness of the disclosure so prejudiced appellant's preparation or presentation of his defense that he was prevented from receiving his constitutionally guaranteed fair trial.* (our emphasis) 529 F.2d at 1128.

In *United States v. Kaplan,* 554 F.2d 577, 580 (1977) the Third Circuit, dealing with the issue of belated production of documentary evidence stated:

But even so, we cannot accept defendant's contention that there was a *Brady* violation here. This is not a situation where the withheld information was discovered only after conviction, but one where the evidence became available to the defense during trial. Any failure to produce exculpatory matter came to the attention of the defense before the government concluded its case, and the defense utilized the evidence.

. . . . .

If exculpatory evidence can be effectively presented at trial and the defendant is not prevented by lack of time to make needed investigation, there is no reversible prosecutorial conduct in ill-timed presentation.

 A delayed disclosure by the prosecution is not per se reversible error. *United States v. Kaplan, supra; United States v. Diaz Rodriguez,* 478 F.2d 1005 (9th Cir. 1973) *cert. dismissed* 412 U.S. 964, 93 S.Ct. 3024, 37 L.Ed.2d 1013 (1973). When the statement was received by the defense it had not been completed its cross-examination of the victim. Defense counsel made no request for a continuance in order to investigate any new line of defense suggested by the statement. Rather, defense counsel cross-examined the victim as to discrepancies between the statement and her testimony on direct examination. Smoot's attorney had the written statement marked as an exhibit but did not introduce it into evidence and thus place it before the jury.

The victim's statement is in all material portions consistent with her testimony at the preliminary hearing and at trial. This is not a situation where the prompt disclosure of the statement would have enabled the defense to discover new witnesses or documents in support of their theory of defense. The receipt of the statement during trial, defense counsel's failure to request a continuance and defense counsel's extensive use of the statement during cross-examination of the victim militate against a finding of prejudice based on late disclosure. We cannot hold in the present case that the state's belated disclosure of the victim's statement so prejudiced Smoot's preparation and presentation of his case that he was denied a fair trial.

Smoot next argues that error was committed by the prosecution's failure to provide him with a complete list of witnesses that they intended to call pursuant to pretrial discovery motions. Smoot contends the failure of the prosecution to supply him prior to trial with the names of Robert Lamb and Susan Wood, both of whom testified for the prosecution at trial, denied him due process of law.

I.C.R. 16(a)(1)(vi) provides for the discovery by the defendant of the names and addresses of all persons having knowledge of the relevant facts who may be called by the state as witnesses. This is essentially the same purpose accomplished by the endorsement requirement of I.C. § 19–1302. *State v. Nelson,* 97 Idaho 718, 552 P.2d 226 (1976); *State v. Fisk,* 92 Idaho 675, 448 P.2d 768 (1968).

 Smoot did not object while Lamb and Wood were testifying on the ground that he was not notified by the prosecution that they might be called as witnesses, nor did he seek a continuance so he could prepare to meet such testimony. The record indicates that the first objection to the admission of Lamb's testimony was at the close of the state's case in chief when Smoot moved for a mistrial on numerous grounds including the failure of the prosecution to list Lamb as a witness. I.C.R. 16(g) clearly gives the trial court discretion as to what sanctions, if any, should be imposed for failure to comply with discovery orders. *State v. Buss,* 98 Idaho 173, 560 P.2d 495 (1977). Smoot has shown no prej-

udice by the trial court allowing Lamb to testify. Under these circumstances, we cannot say that the trial court abused its discretion in allowing the trial to continue and not excluding Lamb's testimony.[1]

■ As to the failure of the prosecution to give timely notice of Wood's status as a possible state witness, Smoot at no time made an appropriate objection to the admission of such testimony; did not ask for a continuance to meet such testimony; was aware of the substance of Wood's testimony since she testified substantially the same at the preliminary hearing and has made no showing of how he was prejudiced by the failure of the prosecution to give notice. With these factors in mind, we cannot hold the prosecution's failure to give timely notice constituted prejudicial error.

■ Smoot's final assignment of error concerning discovery relates to the failure of the prosecution to preserve samples of seminal fluid found in the victim's vagina or on her clothing on the grounds the samples could have been used to determine the blood type of the man who had intercourse with her.

The record indicates that there are no facilities in this state to perform such tests, that the tests must be made quite soon after the specimens are obtained if they are to be at all reliable, that the tests are often inconclusive and that the prosecution believed the tests were inconclusive.

■ Smoot contends that the state's failure to preserve the specimens, which he argues were material to the question of his guilt or innocence, constituted suppression of evidence in contravention of the principles pronounced in the case of *Brady v. Maryland, supra.* These specimens and what results could be determined therefrom are outside the requirements and beyond the intendments of the *Brady* case. These specimens would have most likely rendered

inconclusive results because of the nature of the circumstances surrounding their acquisition; and, as such, the failure to preserve such did not constitute the withholding of evidence that would be either favorable to the accused or material to his guilt or innocence. The duty of the prosecution to disclose includes the duty to use earnest efforts to preserve evidence for possible use by defendant. *State v. Ward*, 98 Idaho 571, 569 P.2d 916 (1977). The failure of the specimens to be preserved occurred through no fault of the state. *State v. Ward, supra.* We find no error in this regard.

PROSECUTORIAL MISCONDUCT DURING TRIAL

■ Smoot claims that the prosecution made improper comments in closing argument which were calculated to inflame the passions and prejudices of the jury. Smoot's complaint as to the state's closing argument has some validity. In his closing argument the prosecutor injected some personal comment and made several references to an irrelevant fact of the victim's knowledge of the defendant having a wife who was eight months pregnant at the time of the rape incident.[2] In the recent case of *State v. Sistrunk*, 98 Idaho 629, 630, 570 P.2d 866, 867 (1977) we stated:

> Counsel for both sides have traditionally been afforded considerable latitude in their arguments to jury and have the right to discuss fully, from their respective standpoints, the evidence and the inferences and deductions arising therefrom.

Some of the prosecutor's argument appears to have gone beyond the bounds of the above guideline, and we caution prosecutors to exercise more care in addressing the jury during argument, avoiding references to personal opinion and irrelevant material.

The state contends that the misconduct of the prosecutor in closing argument, if any,

1. *State v. Crook*, 98 Idaho 383, 565 P.2d 576 (1977); *State v. Goodrick*, 95 Idaho 773, 519 P.2d 958 (1974); *State v. Griffith*, 94 Idaho 76, 481 P.2d 34 (1971).

2. Evidence as to Smoot's wife being pregnant at the time of the rape incident was elicited by the prosecution in their cross-examination of Smoot. No objection was made to this testimony by the defense.

does not rise to the level of prejudicial error. I.C.R. 52 states: "Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." In cases prior to our adoption of I.C.R. 52 we expressed the following standard for determining whether prosecutorial misconduct in closing argument was reversible or harmless:

> Where the issue of guilt is debatable or it appears from the record that the jurors could have reasonably entertained doubt as to the defendant's guilt and the prosecuting attorney's misconduct might have influenced the result, a conviction will be reversed.

*State v. Spencer*, 74 Idaho 173, 184, 258 P.2d 1147, 1154 (1953).

The purpose of a harmless error rule is to "block setting aside convictions for small errors or defects that have little, if any, likelihood of having changed the results of the trial." *Chapman v. California*, 386 U.S. 18, 22, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1967). The Supreme Court in *Chapman* stated:

> We prefer the approach of this Court in deciding what was harmless error in our recent case of *Fahy v. State of Connecticut*, 375 U.S. 85 [84 S.Ct. 229, 11 L.Ed.2d 171]. There we said: "The question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." Id., at 86–87 [84 S.Ct. 229].

386 U.S. at 23, 87 S.Ct. at 827.

The Court in *Chapman* went on to say that before error can be classified as harmless error, an appellate court must apply the *Fahy* standard and declare a belief, beyond a reasonable doubt, that there was no reasonable possibility that such evidence complained of contributed to the conviction. *Chapman v. California, supra* at 24, 87 S.Ct. 824.

Dr. Byrd testified that based on the motility of the sperm found in the victim's vagina during his examination of her at 4:00 a. m., the morning in question; he concluded that the victim had had intercourse within six to eight hours of his examination. Her friend testified that she picked the victim up at her home at just before 8:30 p. m. on the evening of May 16, 1975. She further testified that except for brief moments the victim was with her at all times that evening until the bar closed at 1:00 a. m. Smoot testified that he was with the victim from 1:00 a. m. until approximately 2:40 a. m. when they returned to Pocatello. Smoot admitted that he had attempted to have sexual intercourse during this time with her but was unable to do so because of intoxication. A friend of the victim testified she received a telephone call at 3:00 a. m. that morning from her in which she stated she had been raped. The victim came to her friend's house approximately 10 minutes later and her friend called the Pocatello Police shortly thereafter. Such testimony makes it appear highly improbable that the victim could have had intercourse with anyone other than the defendant. Apparently the jury came to this same conclusion. The record in the instant case substantiates the guilt of Smoot within the standards set out in *Chapman*.

The prosecutorial misconduct was not of such a nature to warrant reversal in light of the evidence presented in the case. We are of the opinion that there is not a reasonable possibility the prosecutorial misconduct in closing argument may have contributed to the guilty verdict in this case.

Smoot further contends that the prosecuting attorney was guilty of misconduct in his voir dire examination of the jury and in his opening statement. We have reviewed the record carefully and we do not find prejudicial error in the prosecutor's remarks in either voir dire or his opening statement.

## EVIDENTIARY RULINGS AND COURTROOM PROCEDURE

Smoot contends he was deprived of a fair and impartial trial by the trial court allowing Dr. Byrd, the examining physician, to testify before there was a corpus delicti established and before a foundation had been laid for his testimony. The gist of Smoot's argument is that the trial court by allowing the examining physician to testify

prior to the victim deprived him of his ability to impeach testimony as to her physical condition after the alleged rape.

■■■ The order of trial and the presentation of evidence is within the sound discretion of the trial court and error may not be predicated on variation in the absence of showing prejudice. *State v. Johnson*, 92 Idaho 533, 477 P.2d 10 (1968); McCormick on Evidence § 58 (E. Cleary ed. 1972). No abuse of such discretion is evident and no prejudice has been shown. As stated in McCormick on Evidence, *supra* at 134:

> Who decides the order of facts? In the first instance, the offering counsel does so by making his offer. The court in its general discretionary supervision of the order of proof, may, to avoid a danger of prejudice or confusion, require that the missing fact be proved first. But he seldom does, and the everyday method of handling the situation when the adversary objects to the relevancy or the competency of the offered fact is to permit it to come in conditionally, upon the assurance, express or implied, of the offering counsel that he will "connect up" the tendered evidence by proving, in the later progress of his case, the missing facts.

The prosecution, in the instant case, provided all elements of the corpus delicti in later testimony, thus providing all necessary "connecting" proof for Dr. Byrd's testimony. If Smoot's counsel felt he had been denied the opportunity to fully cross-examine Byrd or wanted additional testimony from him, he could have asked to recall him as a witness for further cross-examination or call him as a witness during his case-in-chief.

■■■ Smoot makes several assignments of error concerning the admission in evidence of hearsay testimony at trial. The only material arguments concern testimony by both the victim and her friend as to their conversation during the early morning hours of May 17, 1975 wherein the victim stated she was raped.

■■■ This issue of the admissibility of this type of hearsay testimony was discussed by this Court in *State v. Hall*, 88 Idaho 117, 128, 397 P.2d 261, 267 (1964) where we stated: ". . . it may be shown that the prosecutrix made complaint of the outrage soon after its commission, but that details of the conversation and the name of the accused are inadmissible." [3] This testimony complained of by Smoot concerned only the complaint by the victim that she had been raped. Such statements are clearly admissible under the above stated rule and as such no error was committed by their admission.

■■■ Smoot's next assignment of error concerns the trial court permitting the victim to sit at counsel table during one phase of the trial. In his motion for mistrial Smoot's counsel contended that the jury was distracted by her movement to counsel table during his opening argument. This Court recently stated in *State v. Shaw*, 96 Idaho 897, 901, 539 P.2d 250, 254 (1975):

> Ordinarily witnesses (other than a defendant) should not be seated at counsel table unless a showing is made to the trial judge of the necessity of having the witness present with counsel to facilitate the trial of the case. Whether a witness should be allowed to remain at counsel table is addressed to the discretion of the trial court.

In response to Smoot's motion for mistrial the trial court stated:

> . . . I believe it is necessary and desirable to have her present at counsel table during your presentation to enable the state to better communicate with her and confer with her about the various witnesses. So your motion will be denied and she will be permitted to remain at counsel table.

In addition, the trial court, in denying Smoot's motion for mistrial, apparently felt

---

**3.** Declarations of a woman under the fright of a recent rape are admissible including all relevant details if the statement meets all the requirements of the res gestae exception to the hearsay rule. *State v. Hall, supra.*

that the distraction of the jury, if any, was not sufficient enough to constitute prejudicial error. It was within the trial court's discretion to allow the victim to sit at counsel table and to deny Smoot's motion for mistrial and we find nothing in the record that indicates such discretion was abused.

## JURY INSTRUCTIONS

Smoot assigns as error the failure of the trial court to give the following instruction:

> A charge such as that made against the defendant in this case is one, which, generally speaking, is easily made, but difficult to disprove even though the defendant is innocent. Therefore, I charge you the law requires that you examine the testimony of [the victim] with caution.

This cautionary instruction has its origins in the writings of Sir Matthew Hale, Lord Chief Justice of the King's Bench from 1671 to 1676. This Court's reference to Hale's writings in *State v. Wilson*, 93 Idaho 194, 457 P.2d 433 (1969) and *State v. Baker*, 6 Idaho 496, 56 P. 81 (1899) cannot be read as a mandate that such a statement be a required and necessary jury instruction in sexual offense cases. On the contrary, cautionary instructions are within the discretion of the trial court, and it does not appear the trial court abused its discretion in refusing to grant the above cautionary instruction. *State v. Starry*, 96 Idaho 148, 525 P.2d 343 (1974); *State v. Radabaugh*, 93 Idaho 727, 471 P.2d 582 (1970); *State v. Puckett*, 88 Idaho 546, 401 P.2d 784 (1965).

Moreover, the jury instruction that rape is easy to charge and difficult to disprove, and that a rape victim's testimony must be examined with caution is inappropriate in modern criminal proceedings. The majority of states hold that such an instruc-

tion is improper in sexual offense cases. Recent cases have concurred with the majority view and have disapproved of the use of such an instruction. *State v. Settle*, 111 Ariz. 394, 531 P.2d 151 (1975); *Taylor v. State*, 257 Ind. 664, 278 N.E.2d 273 (1972); *State v. Feddersen*, 230 N.W.2d 510 (Iowa 1975); *State v. Wilder*, 4 Wash.App. 850, 486 P.2d 319 (1971); *State v. Mellis*, 2 Wash.App. 859, 470 P.2d 558 (1970).

The California Supreme Court in the recent case of *People v. Rincon-Pineda*, 14 Cal.3d 864, 123 Cal.Rptr. 119, 538 P.2d 247 (1975), disapproved of any further use, in any context, of instructions in the prosecution of rape and other sexual offenses to the effect that such a charge is easily made and difficult to disprove. Prior to *Rincon-Pineda*, the California Court had held such an instruction to be mandatory in sex offense cases. The court after a review of empirical data ruled that the statement contained in such an instruction was factually erroneous. On the contrary, the studies reviewed showed rape was a charge difficult and traumatic to make and extremely difficult to establish in court.

Other courts have disapproved of such a cautionary instruction on the ground it applies a stricter test of credibility to rape victims than other witnesses and, as such, invades the province of the jury by intimating an opinion on the credibility of the victim and the weight to be given her testimony. *Taylor v. State, supra.*[4]

We agree that the use of a cautionary jury instruction in sex offense cases, such as that proposed by Smoot, is improper and disapprove of its future use.

Smoot also assigns as error the court's refusal to give his requested jury instruction to the effect that if a witness wilfully testified falsely in one material

---

4. The Arizona Supreme Court in *State v. Settle*, 111 Ariz. 394, 541 P.2d 151 (1975) criticized the instruction as being an expression by the judge of his personal opinion as to the facts in the case. The Washington Court of Appeals also relied on this theory and its constitutional provision which prohibits a judge commenting on the evidence in determining that such cautionary instructions were improper. *State v. Wil-*

*der, supra*; *State v. Mellis, supra.* Older decisions have disapproved of the instructions on the basis that they do not embody a principle of law and therefore should be included as an instruction. *Doyle v. State*, 39 Fla. 155, 22 So. 272 (1897); *Black v. State*, 119 Ga. 746, 47 S.E. 370 (1904); *Crump v. Commonwealth*, 98 Va. 833, 23 S.E. 760 (1894).

part of his or her testimony, that the witness was to be distrusted in other parts. The subject matter of this requested instruction, although stated in somewhat different terms, was sufficiently covered by the instructions given. Therefore, the trial court did not err in refusing such instruction. *See State v. Carpenter*, 92 Idaho 12, 435 P.2d 789 (1967); *State v. McKeehan*, 91 Idaho 808, 430 P.2d 886 (1967).

 Smoot contends the trial court erred in failing to give defendant's requested instruction to the effect that in a criminal case where proof is dependent upon circumstantial evidence the circumstances must not only be consistent and compatible with the guilt of an accused, but irreconcilable with any other rational conclusion. Instructions similar to this have been held applicable only in cases where the state relies solely on circumstantial evidence to establish the defendant's guilt. *State v. Swenor*, 96 Idaho 327, 528 P.2d 671 (1974); *State v. Goodrick*, 95 Idaho 773, 519 P.2d 958 (1974); *State v. Davis*, 69 Idaho 270, 206 P.2d 271 (1949). In the case before the Court, the state presented both direct and circumstantial evidence and therefore there was no error in the trial court's refusal to give this requested instruction.

### SENTENCING

Smoot finally contends that the presentence report furnished the trial court was inadequate and contained false and misleading statements. We disagree. The presentence report appears to meet the standards previously prescribed by this Court, supplying the trial judge with all the information necessary for exercising the sentencing function. The inaccuracies in the report complained of by Smoot were clarified at Smoot's mitigation hearing by the testimony of the presentence investigator who prepared the report.

The judgment of conviction is affirmed.

SHEPARD, C. J., and McFADDEN, BAKES and BISTLINE, JJ., concur.