708 P.2d 906

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Robert  EDWARDS,
Defendant-Appellant.**

No.  14769.

Court  of  Appeals  of  Idaho.

Oct.  23,  1985.

David A. Frazier, Coeur d'Alene, for defendant-appellant.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., A. Rene Fitzpatrick, Deputy Atty. Gen. (argued), Boise, for plaintiff-respondent.

WALTERS, Chief Judge.

A jury found Robert Edwards guilty of robbery and grand larceny. On appeal he raises three issues: (1) the victim's identification of Edwards as the perpetrator should have been suppressed because it occurred under suggestive circumstances at the preliminary hearing; (2) he was deprived of due process when the state failed to secure and preserve potentially exculpatory evidence; and (3) the evidence at trial was insufficient to support his conviction for grand larceny. We affirm the judgments of conviction.

While inmates at the Idaho State Correctional Institution, Edwards and Julius Jones escaped from the prison farm. Edwards and Jones made their escape in a station wagon taken from a supervisor at the farm. Two days later, the station wagon was involved in an automobile accident in Coeur d'Alene, Idaho. The driver and passenger in the front seat and two hitchhikers in the back seat of the station wagon fled the accident scene on foot. Approximately an hour after the accident, Halsey Brant was robbed at gunpoint by two men in a motel near the accident scene. Brant had just entered his motel room, placed his

belongings on the bed, and was returning to shut the door. The door to his room had closed but had not latched shut. On his way back to the door, he heard someone knocking at the room next to his. He peered out through the open door and observed two men with drawn pistols. They saw him and immediately one of the gunmen forced him back into the room. Brant walked backwards facing the two men as they entered the room and closed the door. Brant was ordered to lie face down in the corner of the room. The first gunman who entered the room inquired whether Brant had a car and how much gas was in it. The second man emptied the contents of a steel file box onto the bed. Brant was then bound and gagged. The gunmen took cash, blank checks, credit cards, a set of keys, and then fled in Brant's delivery van. On the following morning Montana police officers stopped the stolen van and arrested the occupants, Edwards and Jones. Approximately two weeks later at the preliminary hearing, Brant identified the two escapees as the men who had robbed him.

Before trial, Edwards moved to suppress evidence of Brant's identification at the preliminary hearing. He also moved to dismiss the charges, contending the state had failed to preserve evidence which he claimed would have exculpated him. Edwards claimed that an examination of the steel file box, a zippered bank pouch, and a tape recorded statement given by Brant on the night of the robbery would have proven that Edwards did not participate in the robbery. The steel box had been dusted for fingerprints by the police upon investigation of the robbery. The box was released to Brant when the police determined there were no identifiable prints on the box. The bank pouch was not dusted because the police concluded that fingerprints could not be obtained from the rough surface of the pouch. The taped interview was erased or destroyed, but a transcript of the tape disclosed that Brant "didn't really see [the other man with Jones]." Edwards presented evidence at trial that another person had been with Jones when Brant was robbed. The district court de-

nied pretrial motions to suppress and to dismiss as well as a post-trial motion for a new trial.

## I

On appeal, Edwards continues to assert that the district court should have suppressed the identification testimony of Brant at trial. He contends that Brant's identification of Edwards at the preliminary hearing occurred in an overly suggestive and unfair manner which violated Edwards' right to due process. U.S. CONST. amend. XIV; IDAHO CONST. art. I, § 13. *See State v. Sadler*, 95 Idaho 524, 511 P.2d 806 (1973). Edwards suggests that his identification at trial was tainted by the suggestive confrontation at the preliminary hearing. At the preliminary hearing, Brant was afforded an opportunity to observe the bailiff or sheriff bring Edwards and Jones into the courtroom. They were wearing blue coveralls but whether they were handcuffed together was disputed at trial. There was no corporeal or photographic lineup conducted prior to the preliminary hearing. At trial, Brant identified Edwards as one of his assailants without any reference to the previous identification at the preliminary hearing.

The task for a court reviewing a claim of eyewitness identification under suggestive conditions is to determine whether, under the totality of the circumstances, the "identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968). *See Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). The interest sought to be protected by the fairness standard of the due process clause is an evidentiary interest. *Manson*, 432 U.S. at 113 & n. 14, 97 S.Ct. at 2252 n. 14. Under standards adopted by our Supreme

Court, there is not a very substantial likelihood of misidentification so "long as 'the identification possesses sufficient aspects of reliability .... [R]eliability is the linchpin in determining the admissibility of identification testimony.'" *State v. Hoisington*, 104 Idaho 153, 161, 657 P.2d 17, 25 (1983), *quoting State v. Crawford*, 99 Idaho 87, 103, 577 P.2d 1135, 1151 (1978) and *Manson*, 432 U.S. at 114, 97 S.Ct. at 2253. *See State v. Kay*, 108 Idaho 661, 701 P.2d 281 (Ct.App.1985); *State v. Matthews*, 108 Idaho 482, 700 P.2d 104 (Ct.App.1985). The test for reliability applies to both in-court and out-of-court identifications. *Hoisington*, 104 Idaho at 162, 657 P.2d at 26.

▪ At the outset, we note that single-subject showups are inherently suspect and generally not condoned. *Id.* However, this case does not necessarily present the suggestive conditions of a lineup or a showup. Unlike the showup situation where the witness confronts the accused shortly after the incident while in the custody of police, the identification in issue here occurred in court where Edwards was represented by counsel and under the impartial eye of the presiding judge. *Commonwealth v. Steffy*, 264 Pa.Super. 110, 399 A.2d 690 (1979); *Holmes v. State*, 10 Md.App. 253, 269 A.2d 175 (1970). Further, the state did not seek to admit nor did it allude to the prior identification when Brant identified Edwards at trial. Brant was subject to cross-examination and impeachment at trial and at the preliminary hearing. Even so, the following factors are to be considered when determining the reliability of Brant's eyewitness identification at the preliminary hearing or at trial:

(1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness's degree of attention, (3) the accuracy of his prior description of the criminal, (4) the level of certainty demonstrated at the identification, and (5) the length of time between the crime and the identification.

*Hoisington*, 104 Idaho at 162, 657 P.2d at 26.

▪ Taking these factors in turn, we first note that Brant had an opportunity to observe Edwards during the robbery for ten to fifteen seconds before being told to lie on the floor. Brant testified that Edwards was in his line of sight, six to seven feet away, and to one side of Jones. Brant had a clear look into the hallway and saw no one else. The hall was well lit and Edwards' face was unmasked. Second, although Edwards and Jones were pointing weapons at Brant, Brant faced his assailants as he was backed into his room. Third, Brant initially commented to police that "he really didn't see [Edwards] at all except that ... there were two men there with pistols." He also described Edwards as being "clean shaven." Edwards' counsel did cross-examine Brant on this prior inconsistent description of Edwards given to police on the night of the robbery. Brant testified at trial that when he was robbed, Edwards and Jones both had mustaches. On redirect at trial, Brant explained that when he used the term "clean shaven," he was referring to the fact that Edwards had less beard stubble on his face than Jones. Brant described Edwards as being shorter than Jones. The record shows that Edwards is in fact shorter than Jones. Fourth, at both the preliminary hearing and at trial, Brant identified Edwards without hesitation. Finally, the length of time between the crime and the preliminary hearing identification was seventeen days. Weighing all the factors, we hold that the in-court identification possessed sufficient aspects of reliability in view of the totality of the circumstances to submit the identification evidence to the jury. The jury was presented with the evidence of Brant's inconsistent description of Edwards. Edwards has not shown that Brant lacked an independent memory of Edwards at trial or assuming, arguendo, that the trial identification was tainted by the preliminary hearing identification. Where there is not "'a very substantial likelihood of irreparable misidentification,' identification evidence is for the jury to weigh." *United States v. Kessler*, 692 F.2d 584, 587 (9th Cir.1982), *citing Man-*

*son,* 432 U.S. at 116, 97 S.Ct. at 2253; *Steffy,* 399 A.2d at 694. As the Court stated in *Manson,* 432 U.S. at 116, 97 S.Ct. at 2253:

> We are content to rely upon the good sense and judgment of American juries, for evidence with some element of untrustworthiness is customary grist for the jury mill. Juries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature.

## II

Edwards next asserts that the charges against him should have been dismissed before trial or that a new trial should have been granted because the state failed to preserve exculpatory evidence. He specifically argues that the police failed to preserve the steel file box, the bank pouch, and an interview of Brant tape recorded on the night of the robbery, thus depriving him of due process. The person accompanying Jones had dumped the contents of the box and presumably had handled the bank pouch. After examining the box and pouch, the police returned them to Brant. Consistent with his assertion that he did not participate in the robbery, Edwards sought to examine the box and pouch for latent fingerprints. Edwards theorized that a microscopic examination of the box and pouch would reveal that Edwards' prints were not on the items. As to the taped interview, it was erased or destroyed after being transcribed.

■ The prosecution must disclose upon an accused's request, evidence material either to guilt or to punishment. *State v. Leatherwood,* 104 Idaho 100, 656 P.2d 760 (Ct.App.1982); *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The duty of disclosure also includes a duty to use honest efforts to preserve evidence for possible use by the defendant. *Leatherwood,* 104 Idaho at 102, 656 P.2d at 762; *State v. Ward,* 98 Idaho 571, 569 P.2d 916 (1977). There are two tests which apply to issues of suppression and preservation. Where evidence has been suppressed or not preserved, but its nature can be determined indirectly through other evidence or testimony, we must determine whether the excluded evidence was material to the case. *Leatherwood,* 104 Idaho at 105, 656 P.2d at 765. Where evidence has been suppressed or agencies have failed to preserve evidence, and the nature of that evidence is not known sufficiently to evaluate its materiality, judicial review must focus on "the conduct of the police and prosecutor." *Id.* at 102, 656 P.2d at 762. Thus, if the evidence is known, the test is materiality; if the evidence is unknown, then the test is to examine the conduct of the police or prosecutor.

■ Evidence is material if it appears to raise a reasonable doubt concerning the defendant's guilt when viewed in relation to all competent evidence admitted at trial. *Id.* at 105, 656 P.2d at 765. As the United States Supreme Court recently stated in *California v. Trombetta,* the constitutional duty to preserve evidence

> must be limited to evidence that might be expected to play a significant role in the suspect's defense. To meet this standard of constitutional materiality, evidence must both possess an exculpatory value that was apparent before the evidence was destroyed [or not preserved], and also be of such a nature that a defendant would be unable to obtain comparable evidence by other reasonably available means.

467 U.S. 479, ——, 104 S.Ct. 2528, 2534, 81 L.Ed.2d 413 (1984) (footnote and citation omitted).

## A

■ In this case, the existence of fingerprint evidence on the steel file box and bank pouch is in question and is not available through other means. Thus, we must examine the conduct of the police. The record before us shows that the police acted in good faith and in accordance with their normal practices. A police fingerprint expert testified that the smudges on the box were unidentifiable. We conclude

that the police found no apparent inculpatory value in the smudged prints and, thus assumed that the smudged prints were of no exculpatory value. A police expert also testified that, in his opinion, fingerprints could not be lifted from the bank pouch. A defense expert testified that a microscopic examination of the smudges on the box and any possible latent prints on the bank pouch might have revealed identifiable prints. Thus, there was conflicting expert opinions from which the jury could weigh with the other evidence admitted at trial. The record does not reveal that the police made any calculated effort to suppress exculpatory evidence. The police did not disregard Edwards' due process rights.

We are not persuaded that the failure to preserve the steel box and bank pouch prejudiced Edwards. He presented alibi evidence at trial that he did not participate in the robbery. This evidence was supplied by Jones but Jones would not reveal the identity of his accomplice in the robbery. The two hitchhikers in the car at the time of the automobile accident testified that another hitchhiker had been in the car but the other man was let out when they first reached Coeur d'Alene the day before the robbery. Both hitchhikers testified that they observed Edwards and Jones leave the accident together. The jury was presented with substantial evidence that Edwards had participated in the crime. When arrested, Edwards had Brant's stolen credit cards in his pocket, was captured in Brant's van with Jones, and was identified as the assailant by the victim.

### B

Next we turn to the unavailability of Brant's tape recorded interview. Before the preliminary hearing, Edwards' counsel made a pretrial discovery request for all statements made by the prosecution's witnesses. The prosecutor's initial response to the discovery request (made after the preliminary hearing) did not reveal the existence of Brant's tape recorded interview. The tape apparently was erased after a transcript was made of the interview. The

transcript of the tape revealed that Brant "didn't really see [Jones' accomplice] at all except that I saw there were two men there with pistols." The transcript of Brant's interview was contained in the prosecutor's supplemental discovery response made after Edwards' preliminary hearing.

Edwards contends that failure to preserve the tape deprived him of a fair trial in three instances. First, he maintains that such information, if it was available before the preliminary hearing, would have bolstered his evidence of misidentification and would have resulted in stronger impeachment material when examining Brant. Second, he suggests that the tape might have revealed that Brant was provided beer during his interrogation which would have effected the weight and credibility of his identification testimony. Third, he insists that the unavailability of the tape demonstrates the "willful destruction" of the recording by the police. We will address these assertions in order.

Edwards' first and second arguments are unconvincing. Edwards has not asserted that the prosecutor's initial response to the discovery was untimely under I.C.R. 16(a)(1). As indicated previously, even if the original tape had been provided in the prosecutor's first response, the first response was made *after* the preliminary hearing. Further, when Brant identified Edwards at trial, the state made no reference to the prior identification. Edwards was afforded ample opportunity to impeach Brant's identification testimony at trial with this prior inconsistent statements.

Concerning the willful destruction of evidence, we have already examined the conduct of the police. Whether the police's failure to preserve the tape deprived Edwards of his right to due process, is determined by the materiality test since a transcript of the interview existed. Under this materiality test, Edwards has failed to show that the tape of the original interview was significant to his defense or that comparable evidence was unavailable. *See Trombetta*, 104 S.Ct. at 2534. Edwards

was provided with the transcript. At trial, Edwards cross-examined Brant concerning the discrepancy in the description on the night of the robbery. The mere possibility that an item of undisclosed information might have helped the defense, or affected the outcome of the trial, does not establish materiality in the constitutional sense. *State v. Martinez,* 102 Idaho 875, 643 P.2d 555 (Ct.App.1982), *citing United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976).

## III

Finally, Edwards argues on appeal that the state presented insufficient evidence to sustain his conviction of the grand larceny charge for stealing Brant's van. Jones testified at trial that Edwards was sick at the time and did not participate in the theft of the van. Edwards argues that he was no more than a passenger in the stolen van. He cites *State v. Bates,* 63 Idaho 119, 117 P.2d 281 (1941), for the proposition that merely proving one is a passenger in a stolen vehicle is insufficient to support a guilty verdict to grand larceny of a motor vehicle. In *Bates* our Supreme Court found no evidence that Bates had participated in the theft of the automobile or was part of any common plan to steal the car. The present case is readily distinguishable from *Bates.* We find the record contains substantial evidence, which, if believed by the jury, would support a finding that Edwards did participate in the theft of the van. Edwards was identified as one of the assailants who took the keys from Brant at gunpoint. Not only was Edwards arrested as he exited the vehicle in Montana, he was found to be in possession of Brant's credit cards and driver's license. A defendant's participation in a theft may be inferred from the defendant's unexplained possession of recently stolen property. *State v. Owens,* 101 Idaho 632, 619 P.2d 787 (1980).

Based on the foregoing reasons, we affirm Edwards' conviction of robbery and grand larceny.

BURNETT, J., concurs.

SWANSTROM, J., concurs in Parts II and III and concurs in the result in Part I.