577 P.2d 1165

The STATE of Idaho,
Plaintiff-Respondent,

v.

Jeffrey TOTTEN, Defendant-Appellant.

No. 12315.

Supreme Court of Idaho.

April 26, 1978.

Charles D. Coulter of Coulter, Reid & Morfitt, Boise, for defendant-appellant.

Wayne L. Kidwell, Atty. Gen., Lynn E. Thomas, Deputy Atty. Gen., Boise, for plaintiff-respondent.

BISTLINE, Justice.

Totten was arrested on January 6, 1976, and charged with two counts of delivery of a controlled substance, one stemming from a transaction on November 11, the other on December 2, 1975. At a trial held on June 7–8, 1976, Totten was found guilty of both charges and was sentenced to a term of 10 years on each count, with the sentences to be served concurrently. Defendant appealed the following day and bond was posted at $5,000.00.

Totten raises two questions on appeal: (1) Did the State fail to disclose material evidence relating to defendant's guilt? (2) Did the trial court err in failing to give an instruction on entrapment? We address the latter question first.

## I.

The defense theory of entrapment was based upon the alleged "violent nature" and the "known method of operation" of one Jim Rosen, an undercover informant who had been recruited by special agent Turner of the Idaho Bureau of Narcotics and Drug Enforcement. Rosen and Turner operated as a team in a series of narcotics transactions leading to the arrest and conviction of Boise heroin dealers.

Ken Howe was the only witness called by the defense. Howe testified that in late November, 1975, Rosen had pistolwhipped one "Skip" for spreading a rumor that Rosen and Turner were narcotics agents. During this same period, Rosen and one "Mac" or "Mec" (agent Turner's alias) allegedly barged into Ken Howe's house, brandishing guns, threatened Howe as being the source of the rumor blowing their cover, and tried at gunpoint to force him to sell them drugs. Totten claimed to be understandably "distraught" at these events. His reluctance to sell was shortly thereafter overcome and Rosen informed Turner that he had taken care of everything, that all was "cool" and that Totten would sell the drugs as requested.

The State notes that Rosen's "violent nature," if any, was directed at another, not at Totten, and was manifested only after Rosen himself had been attacked. The coercive "method of operation" likewise was observed only by Howe, not by Totten. No attempt was made to link any of the alleged incidents to Totten, much less to show how they coerced him into making his first sale to agent Turner (Count I of the information) on November 11, 1975, several weeks before the alleged events. Similarly, the second sale was made to Turner alone, not in the presence of the supposedly violent Rosen. At no time was Totten reluctant to sell. He was "distraught" not out of fear for his own safety but only because of his inability to supply his customers when his own source failed to make delivery on schedule. Moreover, after the final sale, he invited Turner to return as often as he pleased.

In short, there is no substantial evidence linking Rosen's supposedly violent nature and coercive method of operation to Totten. Under such circumstances, the district judge properly denied the requested instruction on the grounds that nothing in the record warranted it and that it would only have served to confuse the jury. As this Court held in *State v. Webster*, 46 Idaho 798, 800, 271 P. 578 (1928), a case involving the sale of liquor by a bootlegger to undercover agents of the sheriff:

> The evidence showed no more than that appellant was given an opportunity to either violate the law or to refuse to do so, which does not constitute entrapment. [Citations omitted.] There being no evidence of entrapment, there was no necessity for the proposed instruction.

*See also State v. Garde*, 69 Idaho 209, 205 P.2d 504 (1949).

## II.

Appellant Totten's second assignment of error concerns what he characterizes as the State's "failure to disclose material evidence relating to defendant's guilt," namely, its failure to volunteer information regarding the whereabouts of Jim Rosen whose testimony was allegedly crucial to defendant's defense of entrapment. Defense counsel submitted motions and orders for discovery on February 9 and March 15, 1976. Both motions were granted. Defendant's motions contained standard language requesting

> to have made available to him a written list of the names and addresses of all persons having knowledge of relevant facts who may be called by the State as witnesses at the trial, together with any record of a prior felony conviction of any such person.

as well as for "any and all information which may assist said Defendant in preparing for trial." In a letter of response, on March 16, 1976, the prosecutor listed, as probable witnesses, three Ada County Sheriff's Office detectives, three Bureau of Narcotics agents, and a lab analyst.

The prosecution likewise submitted a discovery motion on March 5, 1976, which was also granted. In reply to the prosecution's motion, defense counsel replied that

> the Defendant is aware of the following persons who may have information which the Defendant may wish to introduce in evidence at trial in this matter: *Jim Rosun, address unknown* ; Ed Brown, Boise; Jeff Henke, Boise; Gay Totten, 3715 Clegg, Boise; Jim Jagger, Boise; Ken Howe, Boise; Wally Cox, Boise; Skip "Doe", unknown. (Emphasis supplied.)

Appellant argues that the above exchange of motions, orders and letters served to put the prosecution on notice that defendant Totten wanted to call Rosen as a witness but was unable to locate him. Appellant bolsters this argument with extensive quotes from transcripts in the case of *State v. Fretwell, Kitchen and Scott*, Case No. 65C–47. These transcripts, which were made available by a Court order to augment the record, establish that during the same time frame, defense attorneys in the other case were expending over $600 in a futile attempt to locate Rosen when prosecuting attorneys, by their own admission, were fully apprised of his whereabouts. Appellant argues that the State was therefore aware of Rosen's central role in this series of cases and that by failing to come forward with him as a witness, the State was guilty of suppressing evidence.

■ In the recent case of *State v. Brown*, 98 Idaho 209, 560 P.2d 880 (1977), we held that a prosecutor's failure to disclose evidence which has been specifically requested, "is seldom, if ever, excusable." (Quoting from *United States v. Agurs*, 427 U.S. 97, 106, 96 S.Ct. 2392, 2399, 49 L.Ed.2d

342 (1976).) In face of a specific request, the prosecutor will be held to a very high standard of accountability:

> The proper test to be applied in cases where a specific request is made is whether or not the failure to disclose has denied the defendant ". . . evidence [which] might have affected the outcome of the trial." *Agurs*, at 104, 96 S.Ct. at 2398.

*State v. Brown*, 98 Idaho at 213, 560 P.2d at 884. This is not such a case. The above documents do not constitute a "specific request" that the State make Rosen available to the defense.

■ As explained in *State v. Ward*, 98 Idaho 571, 573, 569 P.2d 916, 918 (1977), the question which remains, in the absence of a specific request, is "whether a defendant has been prejudiced by a prosecutor's failure to volunteer evidence available to him." Here again, as in *Ward*, the State argues adoption of the most lenient standard of prosecutorial accountability established in *Agurs*, whereas the defense urges adoption of a far more stringent standard.[1] Once again, however, it is unnecessary for us to decide the precise standard of prosecutorial accountability demanded by the *Idaho* constitution. Regardless of the standard the Court may ultimately adopt in a close case, Totten cannot prevail in the present case under any standard. Totten's argument, if adopted, would require the prosecution not only to produce all evidence which is requested and all that it knows to be otherwise material, but also to plan all possible defense strategies and then collect and produce all evidence which the State might guess might be relevant to such strategies. As we said in *State v. Reyna*, 92 Idaho 669,

---

1. As noted in *Brown*, the United States Supreme Court majority in *Agurs* adopted, as the most minimal requirement under the federal constitution, a showing that the omitted evidence "creates a reasonable doubt that did not otherwise exist." *U. S. v. Agurs*, 427 U.S. at 112, 96 S.Ct. at 2401. The dissent would have found reversible error whenever "there is a significant chance that the withheld evidence, developed by skilled counsel, would have induced a reasonable doubt in the minds of enough jurors to avoid a conviction." *Id.* 427

U.S. at 119, 96 S.Ct. at 2404. The trial court would have insisted upon a still stricter test, namely, that nondisclosure requires a new trial whenever "the jury might have returned a different verdict if the evidence had been received." 427 U.S. at 102, 96 S.Ct. at 2397. Still other tests are available. *See*, for example, A.B.A. Standards—Discovery and Procedure Before Trial (1970). *See also* Julian, "The Prosecutor's Duty to Disclose Exculpatory Evidence," 14 Idaho L.Rev. 223 (1977).

674, 448 P.2d 762, 767 (1968), such a "line of reasoning would transform guarantees of a fair adversary system into State obligations to defend the accused as well as prosecute him." Defendant's due process rights impose no such burden upon the State.

The judgment of conviction is affirmed.

SHEPARD, C. J., and McFADDEN, DONALDSON and BAKES, JJ., concur.