656 P.2d 760

**STATE of Idaho, Plaintiff-Respondent,**

**v.**

**Neil LEATHERWOOD,
Defendant-Appellant.**

**No. 14165.**

Idaho Court of Appeals.

Dec. 30, 1982.

Jill Kirshner, Deputy Public Defender, Boise, for defendant-appellant.

David H. Leroy, Atty. Gen., Lynn E. Thomas, Sol. Gen., Stephen J. Gledhill, Dep-

uty Atty. Gen., Boise, for plaintiff-respondent.

BURNETT, Judge.

We are asked to decide whether a criminal defendant was denied due process by police failure to preserve tape recordings of certain telephone conversations. The facts framing this issue began to unfold in a Boise restaurant. While a patron of the restaurant was eating dinner, his attention was drawn to a public telephone near his table. There he saw and heard another person call the police and say that a certain drug store would be robbed in forty-five minutes. The caller did not state his name. Shortly thereafter, the same person called the police twice more—saying that the robbery would occur at the drug store's closing time, and asking for a particular detective who apparently was not available to the phone. Following the last call, another individual knocked on a window of the restaurant and gestured to the caller. They left the restaurant together in an automobile. Approximately fifteen minutes later, a Boise drug store, different from the one mentioned in the telephone calls, was robbed at gunpoint.

Aided by information provided by the witness at the restaurant, the police promptly apprehended the robber. He turned out to be one Louis Fazio, and was identified as the individual observed making the telephone calls. The person who had knocked on the restaurant window was found in the company of Fazio, driving the same car seen at the restaurant. That person was Neil Leatherwood.

Fazio and Leatherwood were charged and convicted of first degree burglary and robbery. The evidence against Leatherwood tended to show that he had driven Fazio to and from the drug store, and that he had consumed some of the drugs taken in the robbery. Contraband was also found in Leatherwood's automobile.

The case had an ironic twist. Fazio had served as a confidential police informant in drug traffic investigations. There was speculation that Fazio, being somewhat familiar with law enforcement procedures, had called the police to divert them from the site of the robbery. Leatherwood's counsel suggested, to the contrary, that the telephone conversations might have been the product of complicity between Fazio and the police. Counsel made a pretrial discovery request for tape recordings of those conversations. However, through what was explained as a clerical error, the police extracted from the dispatch recording tape only a telephone call from the drug store proprietor who reported the robbery. The tape apparently was erased and reused, without extracting Fazio's conversations, before the error was detected.

At the outset of a jury trial, Leatherwood's counsel moved for dismissal of the charges against his client, asserting that Leatherwood may have been entrapped and could not receive a fair trial without the recordings of those conversations. The motion was denied. During trial, the man who overheard the telephone calls in the restaurant testified as to what Fazio had said. Fazio himself did not testify. Leatherwood did not call as witnesses any members of the police force who had received the telephone calls in question. The defense did not develop a theory of entrapment. Leatherwood simply testified that he drove Fazio to and from the drug store as a personal favor, and that he had no knowledge of any robbery until he was arrested. Evidently, the jury did not believe him.

Upon this record, Leatherwood contends that he was deprived of due process by failure to preserve tape recordings of the telephone calls made by Fazio. For reasons stated below, we hold that Leatherwood was not denied due process; and we affirm his judgment of conviction.

I

In *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the United States Supreme Court held that the prosecution must disclose to an accused, upon request, evidence material either to guilt or to punishment, and that failure to do so violates the due process clause of the Fourteenth Amendment, "irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87, 83 S.Ct. at 1196. Although

the Idaho Supreme Court has not yet had occasion to so hold, we presume that a similar rule would inhere in the due process clause of Art. 1, § 13, Idaho Constitution. The emphasis in *Brady* upon an accused's right to a fair trial marked a new direction in due process cases, which previously had focused upon the conduct of the government. Note, *The Prosecutor's Constitutional Duty to Reveal Evidence to the Defendant,* 74 YALE L.J. 136 (1964).

The general duty established in *Brady* spawned a host of state and federal cases in which the withholding of evidence by the prosecution was challenged. In those cases, the courts attempted to elaborate the *Brady* duty in terms of the specificity of the request made by the accused and the materiality of the evidence sought. *See, e.g., United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); *State v. Brown,* 98 Idaho 209, 560 P.2d 880 (1977).

The progeny of *Brady* also included a related line of cases, dealing with failure by the police or prosecutor to preserve evidence. In *State v. Ward,* 98 Idaho 571, 569 P.2d 916 (1977), our Supreme Court held "that the duty of disclosure includes a duty to use earnest efforts to preserve evidence for possible use by defendant . . . ." *Id.* at 573, 569 P.2d at 918. *See also State v. Smoot,* 99 Idaho 855, 860, 590 P.2d 1001, 1006 (1978); *State v. Wells,* 103 Idaho 137, 645 P.2d 371 (Ct.App.1982). The reference to "earnest efforts" reveals that where the issue is failure to preserve evidence, as opposed to withholding it, the judicial focus is not necessarily limited to the specificity of a discovery request or to materiality of the evidence. Rather, the courts may also take into consideration the conduct of the police and prosecutor. At first blush this broadened focus may seem inconsistent with *Brady's* disregard "of the good faith or bad faith of the prosecution." However, there is a compelling reason for the broader focus in some evidence preservation cases. It is, simply, that where the police or prosecution have failed to preserve evidence, the nature of that evidence may not be known sufficiently to evaluate its materiality or to compare it with any discovery request that might have been made.

This unique characteristic of some evidence preservation cases has produced judicial uncertainty concerning the standards by which all such cases should be decided. *See* Comment, *Judicial Response to Governmental Loss or Destruction of Evidence,* 39 U.Chi.L.Rev. 542 (1972). Some courts have treated these cases like those in which evidence was withheld, and have examined the due process issue from the standpoint of prejudice to the accused. *E.g., Trimble v. State,* 75 N.M. 183, 402 P.2d 162 (1965). Other courts have drawn analogies to cases involving the destruction of working or "interim" notes of government investigators. *E.g., United States v. Augenblick,* 393 U.S. 348, 89 S.Ct. 528, 21 L.Ed.2d 537 (1969). The latter approach emphasizes not the possible usefulness of the missing evidence to the defense, but the conduct of the government agents, and the procedures followed, in handling the evidence in question.

In Idaho we have taken our bearings largely from cases where evidence was withheld—focusing upon the materiality of the evidence and prejudice to the accused. In *State v. Ward, supra,* where evidence had been lost, our Supreme Court discussed the ruling of the United States Supreme Court in *United States v. Agurs, supra,* a leading case on withholding of evidence. Our Supreme Court's discussion mentioned, but declined explicitly to apply, the standards of materiality set forth in *Agurs.* However, our Supreme Court appeared to decide in *Ward* that, by any test of materiality, the defendant had failed to show that he was actually prejudiced by the loss of evidence. Similarly, in *State v. Martinez,* 102 Idaho 875, 643 P.2d 555 (Ct.App.1982), we recently rejected a due process challenge to a judgment of conviction, where allegedly exculpatory tape recordings of telephone calls made by the defendant from the county jail had been erased. We, too, focused upon the question of actual prejudice, and relied upon *Agurs* to hold that the test of "materiality" in the constitutional sense is not satisfied by a "mere possibility" that the evidence in question might have helped

the defense. *Id.* 102 Idaho at 879, 643 P.2d at 559.

■ In both *Ward* and *Martinez,* although certain evidence had been lost or destroyed, the nature of the evidence was sufficiently known to make a meaningful determination of materiality. In such cases, we believe it is appropriate to draw guidance from the standards of materiality enunciated in cases where evidence has been withheld. These standards relate to the fundamental concern in *Brady*—avoidance of an unfair trial to the accused. However, if the nature of the evidence lost or destroyed is unknown, and cannot be established indirectly by other testimony or evidence, then the materiality tests are not meaningful. In those cases, it would appear necessary to focus primarily upon the reasonableness of the government's conduct, placing a heavy burden upon the government to show that none of its procedures, or the conduct of its agents, has been tainted by disregard for an accused's right to a fair trial. *Cf. United States v. Bryant,* 142 U.S.App.D.C. 132, 439 F.2d 642 (D.C.Cir.1971) (holding, prospectively, that federal investigatory agencies must adopt regulations specifically designed to preserve all discoverable evidence).

The instant appeal falls within the ambit of cases where the nature of the evidence lost or destroyed can be established indirectly by other evidence or testimony. The witness who overheard Fazio's telephone conversations testified about them. Moreover, nothing in the record indicates that Leatherwood lacked the opportunity, if he had so chosen, to discover and to call as witnesses the members of the police force who had spoken with Fazio. Accordingly, we deem it appropriate to analyze this case

in the context of the materiality of the evidence lost, rather than focusing upon the conduct of the police in erasing the tape recordings.[1]

## II

Our determination that this case should be decided by a materiality standard leaves us with the task of articulating what that standard is. In *Agurs,* the United States Supreme Court, interpreting the federal constitution, appeared to adumbrate two standards of materiality—one for cases in which a specific discovery request has been made, and another for cases in which either a broad discovery request, or no request at all, has been made. For the former group of cases, *Agurs* suggested the evidence sought would be deemed material if it "might have affected the outcome of the trial." 427 U.S. at 104, 96 S.Ct. at 2397. As to the latter group of cases, *Agurs* said the evidence would be material if it "creates a reasonable doubt that did not otherwise exist." 427 U.S. at 112, 96 S.Ct. at 2401.

The Supreme Court in *Agurs* implicitly assumed that there was a fundamental difference between these tests. Our Supreme Court, in *State v. Brown, supra,* apparently made the same assumption. The majority opinion in *Brown* took special care to explain which of the two tests should be applied in that case, although it did not say whether those tests should be grafted to the due process protection afforded by the Idaho Constitution. For a general discussion of *Brown* and *Agurs, see* Note, *The Prosecutor's Duty to Disclose Exculpatory Evidence,* 14 Idaho L.Rev. 223 (1977).

---

1. Although our decision in this appeal does not turn upon the conduct of the police, the occasion for an appeal was created by the police. The case has consumed much of the Court's time, as well as the time and effort of the attorneys for both the Attorney General and the Ada County public defender. The appeal would have been avoided if the police had retained the dispatch telephone tape recordings for a longer period of time before erasing and reusing them. If the Boise Police Department, or police and sheriff's departments elsewhere

in Idaho, are erasing and reusing tapes frequently to save money, it is a false economy. We reemphasize today what we said earlier this year:

[T]he better practice for the future would be erasure of ... taped evidence only after review by defense counsel and his determination that the evidence is not material to the defense.

*State v. Martinez, supra,* 102 Idaho at 879, 643 P.2d at 559.

However, we cannot accept the *Agurs* assumption uncritically. The need for two tests was not fully explained in *Agurs*. Indeed, the Supreme Court may have misplaced its reliance upon a law review comment cited in support of a statement that "[t]he test of materiality where specific information has been requested by the defense is not necessarily the same as in a case where no such request has been made." 427 U.S. at 106, n. 14, 96 S.Ct. at 2398, n. 14. The author of the law review comment actually had argued that a specific request was not indispensable to the *Brady* rule, and that "judicial repitition of the request requirement may, in fact, only be intended to emphasize the desirability of a request whenever feasible." Comment, *Brady v. Maryland and the Prosecutor's Duty to Disclose,* 40 U.Chi.L.Rev. 112, 117 (1972).

Moreover, the seminal question in any criminal case is whether the guilt of the accused has been established beyond a reasonable doubt. From an appellate perspective, we cannot say that the unavailability of certain evidence "might have affected the outcome of the trial" in which a defendant was found guilty unless it would "[create] a reasonable doubt that did not otherwise exist." Thus, in our view, although the two tests in *Agurs* may sound conceptually different, they are essentially the same when applied to appellate review. A difference arguably could exist if the words "might have affected the outcome" were interpreted so broadly as to require appellate courts to search for any significant chance that the inferences and arguments which able defense counsel might have developed from the unavailable evidence could have induced a reasonable doubt in the minds of enough jurors to block a verdict of guilt. However, it was precisely upon this point that the majority opinion and minority opinion in *Agurs* were divided. The majority rejected such a broad, speculative approach; and we concur with the majority in that regard.

However, the dichotomy of standards which the *Agurs* majority did adopt may produce unnecessary confusion by seeming to compel a choice between two differently worded, but substantially similar, tests for determining the materiality of evidence. Dissatisfaction with the *Agurs* dichotomy may underlie our Supreme Court's recent reticence about employing the *Agurs* standards, in cases decided after *Brown.* As noted above, our Supreme Court declined to apply such standards in *State v. Ward, supra.* It again declined to do so in *State v. Totten,* 99 Idaho 117, 577 P.2d 1165 (1978). In *Totten,* our Supreme Court simply said that no matter what standard of materiality might apply, it had not been satisfied in that case.

The dichotomy of standards may also lead unnecessarily to nettlesome questions concerning whether a "specific" discovery request has been made. In *State v. McCoy,* 100 Idaho 753, 605 P.2d 517 (1980), our Supreme Court described as "specific"—in the context of that case—a pretrial discovery request for "all documents in the possession, custody, or control of the Prosecuting Attorney and which are material to the preparation of the defense or intended for use by the prosecutor as evidence at trial." *Id.* at 758, 605 P.2d at 522. Such a request might be deemed broad in the context of a different case. There are varying degrees of generality and specificity, and not every case can be placed neatly in one of the two pigeonholes created by the *Agurs* dichotomy.

Finally, we note that in the latest cases involving a prosecutor's failure to disclose information, our Supreme Court has relied upon general statements of a prosecutor's duty, without specific reference to the dual standards of *Agurs.* In *State v. Horn,* 101 Idaho 192, 610 P.2d 551 (1980), the Supreme Court cited *Agurs* merely for the proposition that "[the] state has a constitutional duty to disclose to defendant exculpatory evidence material to the preparation of his case." *Id.* at 195, 610 P.2d at 554. In *State v. Owens,* 101 Idaho 632, 619 P.2d 787 (1980), the Supreme Court cited *Agurs* in support of the same broad proposition, and quoted with approval the language of a pre-*Agurs* case, *Moore v. Illinois,* 408 U.S. 786, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972), in

which the general standards of *Brady* were restated.

We believe that conceptually there should be—and in actuality there is now recognized to be—a unified standard of materiality in Idaho. This standard governs application of the due process clause of Art. 1, § 13, Idaho Constitution, to those cases where evidence has been withheld by the prosecution, and in those cases—like the one before us—where evidence has not been preserved, but its nature can be determined indirectly through other evidence or testimony. We hold that such evidence is "material" under this standard if, viewed in relation to all competent evidence admitted at trial, it appears to raise a reasonable doubt concerning the defendant's guilt.

Applying this unified standard to the instant case, we are not persuaded that the erased tape recordings of Fazio's telephone calls to the police were material. The contention by Leatherwood's counsel, that such tape recordings may have revealed complicity between the police and Fazio, is speculative at best. It is contradicted by the objective circumstances of this case. Fazio was in fact charged, tried and convicted of the burglary and robbery. In any event, the tape recordings were simply a secondary source of information about what Fazio and the police may have said to each other. Direct evidence as to Fazio's side of the conversations was presented through the witness at the restaurant, and direct evidence of the police side of the conversations presumably could have been sought from the police themselves. Nothing in the record on appeal shows complicity or raises a reasonable doubt concerning entrapment.

We conclude that failure by the police to preserve such evidence did not deny Leatherwood due process under the Idaho Constitution. With respect to the federal standard, applicable through the Fourteenth Amendment, we note that a specific discovery request was made in this case. Accordingly, if the *Agurs* tests were viewed as significantly different from each other, the relevant test would be whether the evidence in question "might have affected the outcome of the trial." Upon the record before us, we would be constrained to reach the same conclusion, that Leatherwood was not denied due process.

The judgment of conviction is affirmed.

WALTERS, C.J., and SWANSTROM, J., concur.