718 P.2d 1186

**STATE of Idaho, Plaintiff-respondent,**

v.

**Flora B. ALBRIGHT,
Defendant-appellant.**

**STATE of Idaho, Plaintiff-respondent,**

v.

**Lester HOLLIDAY,
Defendant-appellant.**

**STATE of Idaho, Plaintiff-respondent,**

v.

**Virginia Faye ANDERSON,
Defendant-appellant.**

**Nos. 15755–15757.**

Supreme Court of Idaho.

April 10, 1986.

Russell E. Webb, of Radin & Webb, Idaho Falls, for defendants-appellants.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., and Myrna A.I. Stahman, Deputy Atty. Gen., Boise, for plaintiff-respondent.

BAKES, Justice.

Appellants were convicted of violating I.C. § 18–8004 which prohibits driving under the influence of alcohol, drugs, or other intoxicating substances.

At the time of citation, each appellant consented to a blood alcohol test by means of a drawn blood sample pursuant to the provisions of I.C. § 18–8002.[1] The blood

---

1. **18–8002. Test for driver for blood alcohol.—** (1) Any person who drives or is in actual physi-

alcohol tests were conducted by hospital technicians from the Idaho Falls Consolidated Hospitals, Riverview facility. According to the results of the test, each of the appellants' blood alcohol content exceeded .21.

Some two weeks after the blood samples had been taken, defense counsel moved "to discover" the blood samples for purposes of retesting. While the prosecution orally notified counsel that the hospital had destroyed the samples after ten days, the prosecution did not respond in writing to the discovery request.

Defense counsel then asked that sanctions be imposed upon the prosecution for its failure to respond in a written form. At oral argument the prosecutor stated that he had orally informed defense counsel that the blood samples had been kept by the hospital for ten days but subsequently were destroyed and that he would thus be unable to furnish the samples to the defense. The prosecutor also stated that he had fully complied with the discovery request in that he had provided the defense with test *results* derived from the blood samples by the hospital technicians. The prosecutor further stated that it was the hospital's practice to destroy such samples after ten days. The magistrate denied appellants' motion for sanctions for the prosecutor's failure to respond in writing to the discovery request and further denied the additional motion to suppress the results of the prosecution's testing of the blood samples.

Appellants filed conditional pleas of guilty pursuant to I.C.R. 11(a)(2). Upon entry of judgments of conviction, appellants appealed the magistrate's ruling to the district court, claiming that the state's destruction of the blood samples violated their right to due process of law and that the state's failure to respond to their discovery requests in writing violated I.C.R. 16(e)(1). The appeals were consolidated for purposes of argument before the district court, which subsequently denied appellants' requested relief in all respects. The district court concluded that under the holding of *California v. Trombetta,* 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984), the prosecution had no duty to preserve the blood samples. Appellants appeal, urging this Court to either dismiss the citations, or in the alternative, to suppress evidence of the test results obtained from the blood samples.

We agree with the district court that the prosecution had no duty to preserve the blood samples and that, based upon an application of the holding in *California v. Trombetta,* 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984), to the facts of this case, appellants were not deprived of their right to due process of law. Thus, we now join the other jurisdictions which have recently recognized that the Court's reasoning in *Trombetta* is applicable to determining whether the destruction of a blood sample by the prosecution constitutes a due process violation. *See Houser v. State,* 474 So.2d 1193 (Fla.1985); *State v. Casele,* 198 N.J.Super. 462, 487 A.2d 765 (Ct.A.D.1985).

■ In *Trombetta,* a unanimous Supreme Court determined that intoxilyzer test results, obtained from breath samples, may be admitted into evidence at trial, despite the fact that the breath samples themselves had been destroyed. Refusing to find the due process guarantees of the federal Constitution violated by the destruction of the samples, the Court first emphasized that the law enforcement authorities involved

"did not destroy respondent's breath samples in a calculated effort to circumvent the disclosure requirements established by *Brady v. Maryland,* [373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)],

---

cal control of a motor vehicle in this state shall be deemed to have given his consent to an evidentiary test for concentration of alcohol, drugs or other intoxicating substances as defined in section 18–8004, Idaho Code, provided that such test is administered at the request of a police officer having reasonable grounds to believe that person has been driving or in actual physical control of a motor vehicle while under the influence of alcohol, drugs or of any other intoxicating substances.

and its progeny. In failing to preserve breath samples for respondents, the officers here were acting 'in good faith and in accord with their normal practices.' *Killian v. United States*, [368 U.S. 231, 242, 82 S.Ct. 302, 308, 7 L.Ed.2d 256 (1961)]. The record contains no allegation of official animus toward respondents or of a conscious effort to suppress exculpatory evidence." *California v. Trombetta*, 467 U.S. at 488, 104 S.Ct. at 2534.

The Court then refused to find California's policy of not preserving breath samples to be constitutionally defective. The Court stated:

> "Whatever duty the Constitution imposes on the states to preserve evidence, that duty must be limited to evidence *that might be expected to play a significant role in the suspect's defense.* (Footnote omitted.) To meet this standard of constitutional materiality, ... evidence must both possess *an exculpatory value that was apparent before the evidence was destroyed,* and also be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *California v. Trombetta, supra* (emphasis added.)

An examination of the facts of this case against the rationale articulated in *Trombetta* directs us to conclude that the destruction of the blood samples in this case did not deprive the appellants of their rights of due process.

As in *Trombetta,* the record before us contains no indication that the destruction of the blood samples represented a calculated effort by law enforcement personnel to circumvent disclosure requirements. It is clear from the record that the samples were destroyed by the hospital pursuant to the hospital's established practice of destroying blood samples after ten days.

Further, appellants have not established that the blood samples, if available, would have played a significant role in their defense. There is nothing in this record which would establish that additional tests on the samples of blood would show anything other than that the blood alcohol of each of the appellants was well in excess of .10, the legal limit pursuant to I.C. § 18–8004. Appellants whole argument is based upon the slight possibility that the tests conducted by trained technicians at an independent hospital, in these three independent and unrelated cases, might somehow have been defective. While it would be appropriate for a jury to consider such a slight possibility in arriving at a determination of guilt or innocence, it is not for this Court on appeal to speculate that the independent hospital tests were defective and that, had the appellants conducted additional blood tests, they would have disclosed that the independent hospital tests were flawed.

Nor have appellants convinced us that the destroyed blood samples were of such a nature that comparable evidence could not be obtained. Pursuant to I.C. § 18–8003(2) [2] the appellants were entitled to have their own blood tests run. Thus, appellants could have had a blood sample taken and tested themselves or requested access to the hospital's blood sample prior to the destruction of the sample ten days after the sample was drawn.[3] Because these alternatives were available to appellants, this case presents an even more compelling argument for the state's position, that destruction of the blood samples did not result in a deprivation of due process, than was presented in *Trombetta.* In any event, as the Court noted in *Trombetta,* the

---

**2.** [18–8003.] (2) The person tested may, at his own expense, have a person of his own choosing, who is authorized to make a test, administer an evidentiary test for alcohol concentration in addition to the one administered at the request "of a police officer."

**3.** Appellants' brief, page 26, states, "Mr. Holliday and Miss Anderson were cited for DUI on April 21, 1984, and Mr. Albright was cited on April 22, 1984. Counsel was appointed to represent Mr. Holliday on the 23rd, Mr. Albright on the 25th, and Miss Anderson on the 26th." Despite this early appointment of counsel, the samples of blood were not requested until discovery was filed on May 8, 1984.

party challenging the accuracy of the tests could challenge the tests at trial through careful cross examination of the technicians that performed the tests.

Accordingly, we find no merit in the appellants' argument that destruction of the blood samples resulted in a deprivation of due process under the federal Constitution.

■ Appellants also contend that the prosecution's failure to respond *in writing* to the defense's discovery request entitles the appellants to dismissal of the cases at bar. The prosecution has acknowledged its failure to fully comply with the provisions of I.C.R. 16(e)(1).[4] Thus, the appellants contend, since they were not notified in writing that the blood sample would not be furnished, this case should be dismissed. It is clear from the record that the prosecution orally notified defense counsel that the blood samples had been destroyed. Accordingly, we find no error in the lower court's decision not to grant sanctions against the prosecution in this case.

DONALDSON, C.J., and SHEPARD, J., concur.

HUNTLEY, Justice, dissenting.

The majority misconstrues and misapplies *Trombetta* to arrive at its conclusion that the State may destroy potentially exculpatory evidence.

As the majority notes, defense counsel moved to discover the blood samples for purposes of retesting. The prosecution failed to respond in writing to the discovery request and defense counsel then sought sanctions against the prosecution for its failure to respond. The prosecutor did not present a brief to the court but at oral argument insisted: (1) that he had orally informed defense counsel that the samples had been destroyed and, hence, that he would be unable to furnish them to the defense; (2) that the prosecution's failure to respond in writing to the discovery request was merely a "technicality" and (3) that appellants had not been deprived of their right to due process by the destruction of the blood samples. The prosecutor also argued that he had fully complied with the discovery request inasmuch as he had provided the defense with test *results* derived from the blood samples. He observed that the test results reflected blood alcohol levels of .21 percent, .23 percent, and .27 percent. The prosecutor further represented that it is the practice in Bonneville County for the hospital to destroy such samples after ten days.

The magistrate denied appellants' motion for sanctions for the prosecutor's failure to respond in writing to their discovery request and further denied their additional motion to suppress evidence derived from the prosecution's testing of the blood samples, stating:

It appears to the Court that there is a distinction between blood tests for DUI and semen tests for rape in that blood tests for DUI are usually, and almost wholly only one of the elements of proof of the charge of driving under the influence, where the results of a semen test for rape might be the only evidence they had got, that the Defendant did or did not commit the crime of rape.

Appellants filed conditional pleas of guilty pursuant to I.C.R. 11(a)(2), permitting a direct appeal to the district court from the magistrate's ruling. Appellants then ap-

---

4. **Rule 16. Discovery and inspection.—** . . .

(e) Response to request, failure to file a response.

(1) Response to request. The party upon whom a request has been served shall file and serve a written response within fourteen (14) days of service of the request by filing the original copy with the court and serving a copy upon the opposing party which shall state one or more of the following:

A. That the response has already been complied with and that the inquiring party has been furnished the information, evidence and material listed in the request.

B. That there is no objection to the discovery of the information, evidence and materials sought by the request and that the opposing party shall be permitted discovery at a time and place certain.

C. That the responding party objects to part or all of the information, evidence and materials sought to be discovered in the response, which objection shall be specific and shall state the grounds for the objection.

pealed the magistrate's ruling to the district court, claiming that the state's destruction of the blood samples violated their right to due process of law and that the state's failure to respond to their discovery requests in writing violated I.C.R. 16(e)(1). The appeals were consolidated for purposes of argument before the District Court. Judge H. Reynold George denied appellants' requested relief in all respects. The District Court concluded that under the holding of *California v. Trombetta,* 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984), relied on by the state, the prosecution had no duty to preserve the blood samples. The District Court stated:

> In a recent 1984 case, the U.S. Supreme Court has upheld this Oregon approach on blood samples in the case of *California v. Trombetta* (cite omitted). Although the Trombetta case deals with the results of breath analysis tests, the same reasoning used applies to blood samples. The breathalyzer ampules are subject to preservation and would blood samples [sic] be subject to preservation. Justice Marshall in delivering the opinion for a unanimous Court discussed the Brady case among others but announced that the Court had never squarely addressed the government's duty to take affirmative steps to preserve evidence on behalf of criminal defendants. The Court stated:
>
>> ... Whatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense. To meet this standard of constitutional materiality, *see U.S. v. Agurs,* 427 U.S. [97] at 109–10, [96 S.Ct. 2392 at 2400, 49 L.Ed.2d 342 (1976)], evidence must possess both exculpatory value that was apparent before the evidence was destroyed and also be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means. Neither of these conditions is met on the facts of this case.

There is a complete void in these cases that the blood samples possessed any apparent exculpatory value. Furthermore, the defendant had a right to order an independent test of their own. *See* I.C. 18–8003(2). Several states have held that the existence of such a right provides adequate protection of the accused's Due Process.

Appellants urge this Court to issue an order instructing the district court to dismiss the citations, or in the alternative, to suppress evidence of the test results obtained from the blood samples.

I would reverse the district court's decision affirming the magistrate's ruling denying appellants' suppression motion and remand for further proceedings consistent with my view that the test results should be suppressed. My opinion is grounded in both the 14th amendment due process clause of the United States Constitution and art. I § 3, the due process clause of the Idaho Constitution.

The United States Supreme Court's ruling in *California v. Trombetta,* 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984), discussed *infra,* should not be extended to apply to blood samples in the present case. In *California v. Trombetta, supra,* the Court held that the due process clause of the fourteenth amendment does not require that law enforcement agencies preserve breath samples captured by an Intoxilyzer in order to introduce breath-analysis at trial. The Court first related that there was no showing that in failing to preserve breath samples, the officers were not acting in good faith and in accord with their normal practices. The Court then stated:

> Whatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense. To meet the standard of constitutional materiality, *see United States v. Agurs,* 427 U.S. at 109–110, 96 S.Ct. at 2400, evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, *and also be of such a*

nature that the defendant would be unable to obtain comparable evidence by other reasonably available means. Neither of these conditions is met on the facts of this case. (Emphasis added.)

In so ruling, the Court reversed the California Court of Appeal which had ruled that where a defendant elects to submit to a breath test to determine his blood alcohol level, the due process clause of the fourteenth amendment requires that the defendant be given a separate sample of his breath in a manner which will permit scientifically reliable independent testing by the defendant, if the test is to be used by the prosecution as evidence. See, People v. Trombetta, 142 Cal.App.3d 138, 190 Cal. Rptr. 319 (1983).

The Court, emphasizing the documented accuracy of the Intoxilyzer, the machine used in California to test a defendant's breath for blood alcohol content, concluded that, "in all but a tiny fraction of cases, preserved breath samples would simply confirm the Intoxilyzer's determination that the defendant had a high level of blood-alcohol concentration at the time of the test." California v. Trombetta, 104 S.Ct. at 2534. In Trombetta, the Court instructed that "the materiality of breath samples is directly related to the reliability of the Intoxilyzer itself." Id. at 2534, fn. 10.

The Court also pointed out that "[r]espondents could also have protected themselves from erroneous on-the-scene testing by electing to submit to urine or blood tests ... because the State would

automatically have preserved urine and blood samples for retesting by respondents." (Emphasis Added.) Id. at 2535.[1]

In the case now before the bench, the samples destroyed were not breath samples as in Trombetta but blood samples. In Trombetta, the Court had before it a record establishing the Intoxilyzer to be a virtually foolproof instrument for testing blood-alcohol concentration in breath samples. We cannot here draw the conclusion that the blood-alcohol equipment and procedures used to test the blood-alcohol concentration of a blood sample was either reliable or unreliable because no party to this proceeding made a record on this point. Moreover, the Trombetta holding was based, in part, on the fact that in California a defendant could obtain other comparable evidence by submitting to alternative tests. This is not the case in Idaho. In California, the defendant could have obtained other competent evidence because, by law, the state would have been required to preserve blood or urine samples. By contrast, in Idaho, there is no statutory requirement that breath, blood or urine samples be routinely preserved by law enforcement personnel, whether peace officers or prosecutors.

Perhaps the most significant difference between the facts of Trombetta and those of the present case is the fact that in Trombetta the breath sample obtained by the prosecution for its own testing could not be preserved and retested. The officers would have to affirmatively capture a

1. Cal.Veh.Code § 13353.5 provides:

§ 13353.5. Chemical blood, breath or urine tests; advising persons submitting to breath tests

(a) In addition to the requirements of Section 13353, person who chooses to submit to a breath test shall be advised before or after the test that the breath-testing equipment does not retain any sample of the breath and that no breath sample will be available after the test which could be analyzed later by the person or any other person.

(b) The person shall also be advised that, because no breath sample is retained, the person will be given an opportunity to provide a blood or urine sample that will be retained at no cost

to the person so that there will be something retained that may be subsequently analyzed for the alcoholic content of the person's blood. If the person completes a breath test and wishes to provide a blood or urine sample to be retained, the sample shall be collected and retained in the same manner as if the person had chosen a blood or urine test initially.

(c) The person shall also be advised that the blood or urine sample may be tested by either party in any criminal prosecution. The failure of either party to perform this test shall place no duty upon the opposing party to perform the test nor affect the admissibility of any other evidence of the alcoholic content of the blood of the person arrested.

second sample because the first sample would be expunged from the Intoxilyzer after the alcohol content had been measured.[2] The law does not impose upon law enforcement agencies the requirement that they take the initiative and *procure* evidence which might possibly be exculpatory to a criminal defendant. *State v. Ames,* 109 Idaho 373, 707 P.2d 484 (Ct.App.1985); *State v. Sena,* 106 Idaho 25, 674 P.2d 454 (Ct.App.1983); *State v. Wells,* 103 Idaho 137, 645 P.2d 371 (Ct.App.1982); *State v. Reyna,* 92 Idaho 669, 448 P.2d 762 (1968). The law does, however, require that the prosecution use earnest efforts to preserve material evidence, evidence which might possibly exculpate a defendant, once that evidence is obtained by and is in the possession of the prosecution or its agents. *State v. Smoot,* 99 Idaho 855, 590 P.2d 1001 (1978); *State v. Ward,* 98 Idaho 571, 569 P.2d 916 (1977). In the present case, the blood sample taken by the prosecution for its own testing purposes was not "expunged" or otherwise destroyed as a result of the testing. In fact, the record reflects that the sample was retained for a period of ten days. The facts of the present case, unlike those of *Trombetta,* did not pose a situation where the prosecution would be required to affirmatively gather up additional evidence after taking a sample for its own use; rather, the prosecution had only to retain the sample already collected and already in its possession.

It is a tenet of our system of jurisprudence that the prosecution's primary objective must not be to convict, but rather to see that justice is done. *See, Berger v. United States,* 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed 1314 (1935); *State v. Griffith,* 94 Idaho 76, 481 P.2d 34 (1971). In the present

case, although state's counsel argued that preservation of blood samples was not *mandated* by the fourteenth amendment to the United States Constitution, she commendably acknowledged that "it would be a great policy for the hospital to keep these samples for as long as defense counsel wants them." In the present case, the state has taken the position that appellants would not be entitled to blood samples unless they could show that the retesting of such samples would yield results exonerating them of the crime charged. This position, of course, places appellants in something of a "Catch 22." As a practical matter, appellants cannot demonstrate that a retest of a sample would be exculpatory unless they first have access to the sample for actual retesting. However, they cannot obtain access to the sample for retesting unless they first show that retesting would be exculpatory. This circular reasoning effectively precludes an accused from obtaining access to blood samples already drawn by the prosecution.

It has been said that evidence which has been withheld by the prosecution *or which has not been preserved by the prosecution* is "material" if, viewed in relation to all competent evidence admitted at trial, it appears to raise a reasonable doubt concerning defendant's guilt. *State v. Leatherwood,* 104 Idaho 100, 656 P.2d 760 (Ct.App. 1982). In the present case, this Court has the opportunity to consider the effect of the prosecution's failure to preserve the blood samples requested by the defendant *prior to* the time of trial. Assuming the prosecution had retained the sample and furnished it to the defendants' counsel and assuming further that the defendants had retested the samples and that the test re-

---

**2.** In *People v. Trombetta,* 142 Cal.App.3d 138, 190 Cal Rptr. 319 (1983) the court stated:

A brief description of the operation of the intoxilyzer follows: Prior to any test, the device is purged by pumping clean air through it until readings of 0.00 are obtained. The breath test requires a sample of "alveolar" (deep lung) air (Cal.Admin.Code, tit. 17, § 1219.3); to assure that such a sample is obtained, the subject is required to blow air into the intoxilyzer at a constant pressure for

a period of several seconds. A breath sample is captured in the intoxilyzer's chamber and infrared light is used to sense the alcohol level. Two samples are taken, and the result of each is indicated on a printout card. The two tests must register within 0.02 of each other in order to be admissible in court. *After each test, the chamber is purged with clean air and then checked for a reading of zero alcohol.* (Emphasis added).

sults had shown a blood alcohol content under .10 would such a result raise a reasonable doubt as to the defendants' guilt? The answer, clearly, is yes. *Prior* to the testing of the blood sample, the blood sample is potentially exculpatory *and* potentially inculpatory. Once a test is performed, the result will tend to either inculpate or exculpate the defendant. If the test result is inculpatory and the test were performed incorrectly or the laboratory personnel used improper procedures or erred in recording the test result or mislabelled the sample as to the identity of the donor, such discrepancies would very probably not surface in defense cross-examination of the prosecution's laboratory personnel who administered the test. Such errors, if any, would, however, be immediately apparent if a retesting of a sample yielded a different result. Cross-examination of the person who tested the sample is simply not a sufficient substitute for permitting a defendant to independently retest the sample for the dual purposes of impeaching the state's test results *and* providing independent evidence of the defendant's innocence.

In a case where a criminal defendant is charged with driving under the influence of alcohol, we find no reason whatsoever to permit the prosecution or laboratory personnel administering tests under the prosecution's supervision and direction to arbitrarily and routinely destroy such samples as a matter of policy when, by its very nature, the blood sample, although it may possess a *present inculpatory value* may also possess a *potential exculpatory value.*

For the above reasons we should hold that in a prosecution for driving under the influence of alcohol, due process requires that where the prosecution obtains a *blood* sample from the defendant, the prosecution must preserve *that* sample for independent retesting by the defendant. Therefore, suppression of the blood test results would be required in all prosecutions where the defendant is charged with driving under the influence of alcohol and the prosecutor has, for whatever reason, failed to order the preservation of the sample of defendant's blood already drawn at the prosecution's direction for the purpose of providing it to the defendant's counsel for independent retesting. Of course in those instances where test results are suppressed, it does not automatically follow that the pending charges must be dismissed. The prosecution could present other evidence tending to prove that the accused was driving under the influence.

Further, I express my strong disapproval of the prosecutor's acknowledged failure to comply with the provisions of I.C.R. 16(e)(1).[3] "It is an elementary rule of construction that effect must be given, if possible, to every word, clause and sentence of a statute." Sutherland Stat. Const. § 46.06 (4th Ed.), counsel for the state suggests that the prosecutor's noncompliance with the provisions of the rule was merely a "technical" failing since the prosecutor *orally* informed defense counsel that he would not be furnished the blood sample.

---

**3.** I.C.R. 16(e)(1) and (2) provide:

(e) Response to request, failure to file a response.

(1) Response to request. The party upon whom a request has been served shall file and serve a written response within fourteen (14) days of service of the request by filing the original copy with the court and serving a copy upon the opposing party which shall state one or more of the following:

A. That the response has already been complied with and that the inquiring party has been furnished the information, evidence and material listed in the request.

B. That there is no objection to the discovery of the information, evidence and materials sought by the request and that the opposing party shall be permitted discovery at a time and place certain.

C. That the responding party objects to part or all of the information, evidence and materials sought to be discovered in the response, which objection shall be specific and shall state the grounds for the objection.

(2) Failure to comply. Unless otherwise ordered by the court upon the showing of good cause or excusable neglect, the failure to file and serve a response within the time prescribed by this rule shall constitute a waiver of any objections to the request and shall be grounds for the imposition of sanctions by the court.

I cannot agree that the prosecutor's failure to respond in writing was only "technical." The rule specifically requires that the prosecutor respond *in writing* to a request by the defendant for discovery. That directive cannot be deemed surplusage and prosecutors are not above the law and should not be permitted to blithely ignore the explicit requirement of the rule.

BISTLINE, Justice, dissenting.

In its rush to judgment the majority ignores recently announced law which is directly on point. In *Paradis v. State,* 110 Idaho 534, 716 P.2d 1306 (1986), this Court determined the scope of the state's constitutional duty of disclosing and preserving evidence material either to guilt or punishment, stating:

> The due process protection found in art. 1, § 13 of the Idaho Constitution, mandates, as a condition of fundamental fairness in the conducting of a criminal trial, that the prosecution must disclose to a defendant, upon appropriate request, evidence material either to guilt or to punishment. This rule is true "irrespective of the good faith or bad faith of the prosecution." *Brady, supra,* 373 U.S. at 87 [83 S.Ct. at 1197].

> With respect to cases involving lost or destroyed evidence, a criminal defendant also is not without state due process protection. Whether a due process violation will be found to have occurred under art. 1, § 13 of the Idaho Constitution, will be dependent upon the type of balancing test ... discussed above. *Paradis, supra,* 110 Idaho at 540, 716 P.2d at 1312 (footnote omitted).

The balancing test mentioned has been developed by several courts and is based upon United States Supreme Court decisions relative to the issue before us. *Id.* at pp. 538–539, 716 P.2d at pp. 1310–1311.[1] The test has three parts, each of which must be considered in deciding whether a defendant's due process rights have been

violated by the loss or destruction of allegedly exculpatory evidence:

> (1) whether the evidence was material to the question of guilt or the degree of punishment;

> (2) whether the defendant was prejudiced by the loss or destruction of the evidence; and

> (3) whether the government was acting in good faith when it destroyed or lost the evidence.

*Id.* at p. 539, 716 P.2d at p. 1311.

The majority's reliance upon *California v. Trombetta,* 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984), is misplaced. First, as Justice Huntley has accurately noted, the facts of *Trombetta* appreciably differ from those found here. Second, and to my mind even more important, *Trombetta* involved only *federal* constitutional requirements. In its concluding paragraph, per a footnote, the *Trombetta* Court reminded that: "State courts and legislatures, of course, remain free to adopt more rigorous safeguards governing the admissibility of scientific evidence than those imposed by the Federal constitution." *Id.* 104 S.Ct. at 2535 n. 12 (citations omitted). Yet, today's majority ignores *Paradis* and follows *Trombetta.* More sound to my mind would be the practice of beginning any constitutional review with regard for our own constitution, and only then review federal constitutional law. To ignore both our own constitution plus a recently announced decision directly in point inexcusably serves to breed confusion and uncertainty. The proper resolution of this case at the very least, should be a remand to the district court for further consideration in light of *Paradis.*

---

**1.** Those cases are: *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); *United States v. Augenblick,* 393 U.S. 348, 89 S.Ct. 528, 21 L.Ed.2d 537 (1969); and *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).