748 P.2d 826

**STATE of Idaho,**
Plaintiff–Appellant–Respondent
on Appeal,

v.

**Terrance TRUMBLE,**
Defendant–Respondent–Appellant
on Appeal.

No. 16581.

Court of Appeals of Idaho.

Nov. 25, 1987.

Petition for Review Denied Jan. 25, 1988.

William J. Brauner, Caldwell, for Trumble.

Jim Jones, Atty. Gen. by Myrna A.I. Stahman, Deputy Atty. Gen., of Boise, for State.

### SUBSTITUTE OPINION

The Court's prior opinion, dated September 2, 1987, is hereby withdrawn.

BURNETT, Judge.

We are asked to decide whether a motorist charged with driving under the influence has been deprived of due process by police failure to preserve a videotape of his performance on sobriety tests. Upon the record presented, we hold that no due process violation has been shown.

## I

The background facts may be stated briefly. Shortly before midnight a Canyon County Deputy Sheriff observed an automobile being driven erratically as it left the parking lot of a tavern. When the officer stopped the vehicle, he found that Terrance Trumble was the driver. The officer, after observing Trumble's behavior and his performance on roadside sobriety tests, concluded that Trumble was intoxicated. He arrested Trumble and took him to the Canyon County Detention Center, where an intoximeter test was administered. The test indicated that Trumble had a blood alcohol level of .23%, well above the .10% level necessary to convict a driver of driving under the influence.[1] At the detention center Trumble performed additional sobriety tests, such as reciting the alphabet, counting forward and backward, standing on one foot, and walking in a half-circle. Trumble's performance on these tests was recorded on videotape.

Defense counsel subsequently asked to see the tape. A tape was made available along with a log maintained by the sheriff's department, identifying the tape and the specific place on the tape counter where Trumble would appear. However, when the tape was played, the individual appearing on the tape in the designated place was not Trumble. No recording of Trumble was ever located. Neither was the reason for the disappearance of Trumble's tape segment ascertained, so far as the present record shows.

The defense asked the magistrate to dismiss the DUI charge on the ground that the prosecution had failed to preserve material, exculpatory evidence. The magistrate granted the motion. He opined that "it is impossible for the Defendant to prove that the destroyed evidence [w]as in fact exculpatory since neither he nor his counsel has ever seen the videotape." The state appealed to the district court. The district

judge, in a well-written and closely reasoned decision, concluded that the videotape was not "material" in a constitutional sense. He reversed the magistrate's order. This appeal followed.

## II

In *Brady v. Maryland*, the United States Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment...." 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963). The scope of the *Brady* doctrine has been a subject of extensive litigation. The Idaho courts long ago concluded that *Brady* imposes a duty on the government to preserve exculpatory evidence. As the Idaho Supreme Court explained in *State v. Ward*, 98 Idaho 571, 573, 569 P.2d 916, 918 (1977), "the duty of disclosure includes a duty to use earnest efforts to preserve evidence for possible use by defendant...." *See also State v. Edwards*, 109 Idaho 501, 708 P.2d 906 (Ct.App.1985); *State v. Leatherwood*, 104 Idaho 100, 656 P.2d 760 (Ct.App.1982). This conclusion recently has been confirmed by a decision of the United States Supreme Court. *See California v. Trombetta*, 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984).

The *Brady* doctrine, although simply stated, has not always been so easily applied. Perhaps the most nettlesome problem has been to define what evidence is "material." A closely related question has been how to deal with evidence that has been lost or that no longer exists, making any evaluation of its materiality difficult at best.

The United States Supreme Court addressed the problem of defining materiality in *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). The Court said that materiality would vary ac-

---

1. Trumble has argued that the test results and related police reports should not be considered part of the record on appeal. We disagree. These items were contained in the court file forwarded from the magistrate division to the district court. Consequently, they were part of

the clerk's record as defined in Rule 83(n), I.R.C.P. Upon the record now before us, it appears that Trumble made no motion to delete the test results or the police report before the district court rendered its decision.

cording to whether the defense (a) specifically requested the information suppressed by the government, (b) made a general request for exculpatory information, or (c) made no request at all. This approach was widely criticized. We were among the earliest critics. We called for a unified standard of materiality. *See State v. Leatherwood, supra.* Eventually the Supreme Court modified *Agurs* and adopted such a unified standard. "[E]vidence is material ... if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985).

The related question of lost or destroyed evidence was addressed in *California v. Trombetta, supra.* There the Supreme Court decided that *Brady* was not offended by a routine police practice of failing to preserve breath samples from DUI suspects. The Court stated that the constitutional duty to preserve evidence

> must be limited to evidence that might be expected to play a significant role in the suspect's defense. To meet this standard ... evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.

467 U.S. 479, 488–89, 104 S.Ct. 2528, 2534. *See also State v. Albright,* 110 Idaho 748, 718 P.2d 1186 (1986). Thus, *Trombetta* attempted to impose a threshold requirement of materiality similar to the unified standard of materiality applicable to evidence wrongfully suppressed by the prosecution.

Unfortunately, *Trombetta* did not fully resolve the practical dilemma confronting a judge who must decide whether it is fair to try a defendant after the police have failed to preserve evidence, the exact nature of which is unknown. To say that the evidence must be tested against a threshold standard of materiality begs the question

of evaluating an unknown. The *Trombetta* court implicitly acknowledged this difficulty when it observed that "[w]henever potentially exculpatory evidence is permanently lost, courts face the treacherous task of divining the import of materials whose contents are unknown and, very often, disputed." 467 U.S. at 486, 104 S.Ct. at 2533.

In some cases, the nature of the lost or destroyed evidence can be established indirectly by other evidence or testimony. For example, in *State v. Edwards, supra,* we held that the government's erasure of an audio tape did not preclude consideration of the materiality of its contents because a reporter's transcript of the recording had been made. However, in other situations the nature of the evidence may be entirely unknown or sharply controverted. In such cases, "the materiality tests are not meaningful.... [I]t would appear necessary to focus primarily upon the reasonableness of the government's conduct, placing a heavy burden upon the government to show that none of its procedures, or the conduct of its agents, has been tainted by disregard for an accused's right to a fair trial." *State v. Leatherwood,* 104 Idaho at 103, 656 P.2d at 763. Otherwise, government officials would have an incentive to destroy evidence purposefully, relying on the inability of the defendant to prove the nature of the evidence and thus to prove its materiality. "Were *Brady* ... applicable only when the exact content of the [destroyed] materials was known, the disclosure duty would be an empty promise, easily circumvented by means of destruction rather than mere failure to reveal." *U.S. v. Bryant,* 439 F.2d 642, 648 (D.C.Cir.1971). Accordingly, as we said in *Leatherwood* and reiterated in *Edwards,* if the nature of lost evidence is known, a judge must focus on its materiality; if the evidence is unknown, then a judge may broaden the inquiry to include the conduct of the police or prosecutor.

### III

We now return to the facts of this case. The missing evidence was a videotape segment showing the defendant performing sobriety tests. The magistrate concentrated on the question of materiality, noting

that the videotape "would have contained evidence of whether, and to what degree, [Trumble's] speech was inhibited, to the point of being slurred, mushy-mouthed, incoherent, irrational or otherwise abnormal." This evidence, in turn, might have been used to raise doubt about the reliability of the intoximeter result. *See State v. Knoll,* 110 Idaho 678, 682 n. 3, 718 P.2d 589, 593 n. 3 (Ct.App.1986).

However, Trumble failed to make any showing in the record that the tapes actually could have served this purpose. His motion to dismiss was based upon the record and upon affidavits; however, the affidavit of Trumble himself did not even allege that his performance on the sobriety tests would have been exculpatory. To the contrary, police reports of tests administered at the scene of the arrest indicated that Trumble's performance on the field tests was abysmal. In the absence of some showing to the contrary, we cannot say that the videotape "might [have been] expected to play a significant role in the suspect's defense." *California v. Trombetta,* 467 U.S. at 488, 104 S.Ct. at 2534. Thus, Trumble's argument fails the materiality test.

The question, then, is whether so little is known about the content of the lost videotape that the inquiry should go beyond materiality and focus on the conduct of the police. We think it should. Even if Trumble had testified that the videotape would be exculpatory, his word would have been pitted against that of the officers. Further, neither Trumble nor his counsel ever had an opportunity to view the tape. In effect, the contents of the tape were so controverted that a judge would have been required to deem the contents unknown. *See United States v. Bryant, supra.* Compare *Seattle v. Fettig,* 10 Wash.App. 773, 519 P.2d 1002 (1974) (judge was able to resolve conflict by viewing tapes before their destruction). As we explained in *Leatherwood,* the judge in such a case may examine the conduct of the police.

Nevertheless, this broadened focus is of little help to Trumble. There is no showing that either the prosecutor or the police exhibited disregard for the accused's right to a fair trial. To the contrary, the record indicates that the sheriff's department had a policy of preserving the evidence for possible use by the defense. As noted above, the videotape was marked and was logged into a book maintained for that purpose. The book identified the defendant, arrest number, date, time, tape number, tape counter number, and operator name for each defendant. Law enforcement officials evidently believed that they had preserved the tape, and they agreed to show it to the defense upon request. Although the magistrate found that the sheriff's department did not use "earnest efforts" to preserve evidence for possible use by the defense, the record contains no specific factual support for that finding. The sheriff's office pursued a policy designed to preserve such evidence. The bare fact that the policy failed in this particular case, and that evidence was lost or destroyed, is not sufficient by itself to show an official disregard for Trumble's right to a fair trial. Consequently, upon the record now before us, we conclude that a due process violation has not been shown. The magistrate erred by dismissing the DUI complaint.

The decision of the district court, reversing the magistrate's order, is affirmed.

WALTERS, C.J., and SWANSTROM, J., concur.